IRENE A. SNEATH, complainant-respondent,

*v.*

ERICH LEHSTEN et al., defendants-appellants.

[Submitted February term, 1936.   Decided May 14th, 1936.]

328

330

*Mr. George J. Kauper* (*Mr. Samuel Spingarn,* of counsel) for the appellants.

*Messrs. Platoff & Platoff,* for the respondent.

The opinion of the court was delivered by

PERSKIE, J.

We think that the order requires modification.

*First*—It is the well established rule that a preliminary injunction should not issue unless there be urgent necessity;

nor if the facts necessary to entitle complainant to relief are controverted under oath; nor if the right is not clear as a matter of law. *Citizens Coach Co.* v. *Camden Horse Railroad Co.* (*Court of Errors and Appeals. 1878*), *29 N. J. Eq. 299;* *Kellett* v. *Local No. 274, &c., Canada* (*Court of Errors and Apeals, 1933*); *114 N. J. Eq. 107, 109; A. Hollander & Son, Inc.,* v. *Jos. Hollander, Inc.* (*Court of Errors and Appeals, 1935*), *118 N. J. Eq. 262, 264.* But where the denial lacks those essential qualities, and upon the entire showing from both sides it appears reasonably probable that the complainant had the right claimed, the injunction may issue. *Ideal Laundry Co.* v. *Gugliemone* (*Court of Errors and Appeals, 1930*), *107 N. J. Eq. 108.* Mere fears and apprehensions are not the basis upon which the award of a temporary injunction is sustained. The acts against which protection is sought must not only be threatened but such as will, in all likelihood, be committed to the injury of the complainant, and that injury must be of irreparable character. *Rissler* v. *Plumbers Local No. 326, &c.,* (*Court of Errors and Appeals*), *109 N. J. Eq. 91.*

It may well be that petitioners became fearful and apprehensive of the results accomplished by the "Committee" in obtaining the signatures of the number of certificate holders, and the amount represented by that number, to the "Deposit Agreement." But how, if at all, the action of the "Committee" in obtaining the signatures of certificate holders to their "Deposit Agreement," or how the results accomplished by the "Committee" threatened injury or damage of an irreparable character to petitioners, or the *res* which they were allegedly seeking to protect, in their official capacity, is not disclosed by the record before us.

We are, therefore, of the opinion that where, as here, the material facts upon which petitioners base their right to preliminary relief were met by a full, explicit and circumstantial denial under oath, the general rules is that a preliminary injunction will not issue. That rule was applicable, and should have been followed, in the case at bar. *Citizens Coach Co.* v. *Camden Horse Railroad Co., supra; Meyer* v. *Somerville Water Co., 79 N. J. Eq. 613; Schlemm*

v. *Whittle, 86 N. J. Eq. 415; Brunetto* v. *Town of Montclair, 87 N. J. Eq. 338; Rissler* v. *Plumbers Local No. 326, supra.*

*Second*—Does the order trench upon the federal and state constitutional guarantees against the taking of liberty or property without due process of law? We think it does.

It is an unchallenged fact that the certificate holders appointed the "Committee" to represent them long before the substituted trustees were appointed. Nor is the right of the certificate holders to organize and contract between themselves now challenged. Indeed, it could not be done successfully. The practice is a common one. It is practical, businesslike and has been followed frequently without objection in cases of substantially like character. Compare *Unger* v. *Newlin Haines Co. (Court of Errors and Appeals), 94 N. J. Eq. 458; Kipp* v. *Fidelity Title, &c., Co., 116 N. J. Eq. 409; affirmed, 117 N. J. Eq. 588.* It is the terms of the "Deposit Agreement," the methods employed in obtaining signatures of certificate holders thereto, the financial responsibility of the members of the "Committee," which are challenged.

It is well settled that "the right to make contracts is both a liberty and a property right and is within the protection of the guarantee against the taking of liberty or property without due process of law. Neither the state nor federal governments, therefore, may impose any arbitrary or unreasonable restraint on the freedom of contracts." *12 C. J. 1200.* See, also, *6 R. C. L. 269.*

In the case of *Chicago, Burlington and Quincy Railroad Co.* v. *McGuire, 219 U. S. 549; 55 L. Ed. 328,* Mr. Justice Hughes, fully and carefully discussed the subject, and on pages 338, 339, of *55 L. Ed.* says:

"* * * the right to make contracts is embraced in the conception of liberty as guaranteed by the constitution. *Allgeyer* v. *Louisiana, 165 U. S. 578; 41 L. Ed. 832; 17 Sup. Ct. Rep. 427; Lochner* v. *New York, 198 U. S. 45; 49 L. Ed. 937; 25 Sup. Ct. Rep. 539; 3 A. & E. Ann. Cas. 1133; Adair* v. *United States, 208 U. S. 161; 52 L. Ed. 436; 28 Sup. Ct. Rep. 277; 13 A. & E. Ann. Cas. 764.* * * *."

And again:

"* * * There is no absolute freedom to do as one wills or to contract as one chooses. The guarantee of liberty does not withdraw from legislative supervision that wide department of activity which consists of the making of contracts, or deny to government the power to provide restrictive safeguards. Liberty implies the absence of arbitrary restraint, not immunity from reasonable regulations and prohibitions imposed in the interests of the community. *Crowley* v. *Christensen, 137 U. S. 89; 34 L. Ed. 621; 11 Sup. Ct. Rep. 13; Jacobson* v. *Massachusetts, 197 U. S. 11; 49 L. Ed. 643; 25 Sup. Ct. Rep. 358; 3 A. & E. Ann. Cas. 765. * * *.*"

And further:

"The right to make contracts is subject to the exercise of the powers granted to congress for the suitable conduct of matters of national concern; as, for example, the regulation of commerce with foreign nation and among the several states. *Addyston Pipe and Steel Co.* v. *United States, 175 U. S. 228, 231; 44 L. Ed. 142, 144; 20 Sup. Ct. Rep. 96; Patterson* v. *The Eudora, 190 U. S. 174, 176; 47 L. Ed. 1006, 1007; 23 Sup. Ct. Rep. 821; Atlantic Coast Line Railroad Co.* v. *Riverside Mills, 219 U. S. 186, ante, 167; 31 Sup. Ct. Rep. 164; Louisville & N. Railroad Co.* v. *Motley* (decided this day), *219 U. S. 467, ante, 297; 31 Sup. Ct. Rep. 265.*"

"It is subject, also, in the field of state action, to the essential authority of government to maintain peace and security, and to enact laws for the promotion of the health, safety, morals, and welfare of those subject to its jurisdiction. * * *.*"

The "Deposit Agreement" was a private one between the certificate holders. It may well be said of this agreement, as was said of the agreement in the case of *Unger* v. *Newlin Haines Co., supra,* that it "could not be couched in stronger language or broader power to effectuate its purpose." But, as was held in the *Unger Case,* the court of chancery cannot make an agreement for the parties different from the one they made for themselves; and "contractual rights cannot be disturbed."

Moreover, the issues before the court below were not whether any particular plan of reorganization of the trust company should or should not be approved, or whether the members of the "Committee" were rich or poor. The issues were free from questions of public interest; public order and common good. In short, they involved no question of public policy, and, therefore, could not, obviously, tend to public injury. *Cameron* v. *International, &c., Union No. 384 (Court of Errors and Appeals, 1935), 118 N. J. Eq. 11.* It was a valid and legal private contract, and chancery was, and is, without power either to usurp or deny a jurisdiction which would affect the rights and obligations of the respective parties thereunder. *Grobholz* v. *Merdel Mortgage Investment Co. (Court of Errors and Appeals), 115 N. J. Eq. 411.*

*Third—As to the financial investigation of the members of the "Committee."* To that which has already been written may be added that which the supreme court of the United States said in the recent case of *Jones* v. *Securities and Exchange Commission* (No. 640, October term, 1935), *56 Sup. Ct. Rep. 654,* wherein it especially held:

"* * * An official inquisition to compel disclosures of fact is not an end, but a means to an end; and it is a mere trueism to say that the end must be a legitimate one to justify the means. The citizen, when interrogated about his private affairs, has a right before answering to know why the inquiry is made; and if the purpose disclosed is not a legitimate one, he may not be compelled to answer. * * * Dissociated from the only ground upon which the inquiry had been based, and no other ground being specified, further pursuit of the inquiry, obviously, would become what Mr. Justice Holmes characterized as 'a fishing expedition * * * for the chance that something discreditable might turn up.' (*Ellis* v. *Interstate Commerce Commission, 237 U. S. 434, 445*)—an undertaking which uniformly has met with judicial condemnation. *In re Pacific Railway Commission, 32 Fed. Rep. 241, 250; Kilbourn* v. *Thompson, 103 U. S. 168, 190, 192, 193, 195, 196; Boyd* v. *United States, 116 U. S. 616; Harriman* v. *Interstate Commerce Commission, 211 U. S.*

*407, 419; Federal Trade Commission* v. *American Tobacco Co., 264 U. S. 298, 305, 307."*

There was no legal basis for an investigation into the financial interests and qualifications of the members of the "Committee."

To the extent, therefore, that the order restrains the "Committee" from soliciting further deposits under the "Deposit Agreement," and directs an investigation into the merits of the "Deposit Agreement," and directs an investigation into the financial interest and qualifications of the members of the "Committee," it is modified.

We have considered all other points argued and consider them to be without merit.

The cause will be remitted, the challenged order will be modified in conformity with this opinion; and as so modified is affirmed, without costs to either party.

*For affirmance*—HETFIELD, RAFFERTY, JJ. 2.

*For modification*—THE CHIEF-JUSTICE, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, DEAR, WELLS, WOLFS-KEIL, JJ. 10.