The bill in this case is filed by one Sidney Light, the holder of 177 shares of the common stock of the National Dyeing and Printing Company, a corporation of New Jersey, on behalf of himself and such other stockholders as should come in and contribute to the expenses of the suit. At the time of the hearing of the order to show cause hereinafter mentioned, no other stockholders had joined in the action as parties, nor have any since joined the complainant. At the date of the filing of the bill of complaint, there were issued and outstanding, 2,603 shares of preferred stock and 128,018 shares of common stock of National Dyeing and Printing Company. Thus it appears, that an extremely small stock interest in the company is engaged in prosecuting this suit, and while that, of itself, is, of course, no bar to relief, it is pertinent upon the question of balancing equities, that is, upon the question whether greater inconveniences and loss will come to the complainant or defendants in the granting or withholding of preliminary relief.Aldrich v. Union Bag and Paper Co., 81 N.J. Eq. 244.
The following facts are established by the papers filed in the cause: *Page 508 
The defendant, National Dyeing and Printing Company (hereafter, for convenience, referred to as National), has been engaged in the business of dyeing and finishing textiles since 1908. For some years, its business operations have been conducted in the State of Pennsylvania, while its principal offices remained in the State of New Jersey.
In the early part of 1947, the officers of National consulted tax counsel with a view to obtaining advice as to what changes, if any, could be made in the corporate structure of the company, which would result in tax savings and simplification of operations. As a result, a Pennsylvania corporation, known as Allentown Converting Company (hereafter referred to as Allentown), was formed. It was proposed that National should convey to Allentown its operating assets, valued at $697,782, receiving in return all of the capital stock of Allentown. National would then be dissolved. The preferred stock of National would be paid in full together with accrued dividends. The common stockholders would receive pro rata the stock of Allentown and such other assets as remained after the retirement of the preferred stock. On the basis of National's statement as of December 31st, 1946, the assets remaining for distribution to the common stockholders after the retirement of the preferred stock, and exclusive of the stock of Allentown, had a value of approximately $1,300,000. The directors of National approved of the proposal and called a meeting of the stockholders for July 31st, 1947, to consider and pass upon the proposal. The notice sent to the stockholders read, in part, as follows:
"July 17, 1947
 NOTICE OF SPECIAL MEETING OF ALL STOCKHOLDERS
To all stock holders of National Dyeing and Printing Company:
The Board of Directors has determined that it will be in the best interests of all stockholders of National Dyeing and Printing Company for the Company to be dissolved, and its assets distributed to stockholders. In furtherance of this plan the Board has caused to be formed a new subsidiary corporation known as Allentown Converting Company, and has voted to transfer to that company, in exchange for all of its capital stock (except qualifying shares already subscribed for) certain assets of National Dyeing and Printing Company used in connection with the Company's textile dyeing and finishing business in Allentown. Before any distribution to common stockholders, the *Page 509 
preferred stockholders of the Company will receive the par value of their shares, together with accrued and unpaid dividends thereon.
At a meeting of the Board of Directors of National Dyeing and Printing Company held on the 10th day of July, 1947, the following resolutions were adopted:
RESOLVED that this Board of Directors does declare it advisable and most for the benefit of National Dyeing and Printing Company that the same should be dissolved; and that a meeting of all stockholders, without regard to class, be called for and held on Thursday, the 31st day of July, A.D. 1947, at two o'clock p.m., at the office of the Company, 152 Market Street, in the city of Paterson, New Jersey, to take action upon the question of dissolution of the said Company; and further, that the Secretary give written notice of said meeting and of the adoption of this resolution, to all stockholders, by mail, at least ten days prior to the date of said meeting.
FURTHER RESOLVED that there shall be also submitted to the stockholders, for their proposed ratification at said meeting, the action of the directors in authorizing the transfer of certain real estate and other assets of the Company to Allentown Converting Company, in exchange for 107,328 shares of the capital stock of said Allentown Converting Company without par value, which stock, together with other capital stock of Allentown Converting Company already owned by this company, will constitute all of the outstanding capital stock of Allentown Converting Company.
FURTHER RESOLVED that the Stock Transfer Books shall be closed for said meeting at the end of business on July 11, 1947.
Accordingly NOTICE IS HEREBY GIVEN that a special meeting of all stockholders of National Dyeing and Printing Company, both common and preferred, and without regard to class, will be held on Thursday, the 31st day of July, A.D. 1947, at two o'clock p.m., at the office of the Company, 152 Market Street, in the city of Paterson, New Jersey, to take action on the questions referred to the stockholders by the foregoing resolutions."
At the meeting there were present, in person or by proxy, 2,603 of a total of 2,603 shares of the preferred stock, and 117,399 of a total of 128,018 shares of the common stock. The proposal to sell the operating assets of National to Allentown was approved with 2,603 shares of the preferred stock voting in the affirmative, none being in the negative, and 116,984 shares of the common stock voting in the affirmative and 325 shares in the negative. The proposal to proceed with the dissolution of National was approved with 2,603 shares of the preferred stock voting in the affirmative, none being in the negative, and 117,074 shares of the common stock voting in the affirmative and 325 shares in the negative. *Page 510 
On July 31st, 1947, the day of the stockholders' meeting, complainant filed his bill against National. The bill of complaint is voluminous and the prayers for relief are numerous. For our present purposes, however, we need only concern ourselves with the charge that the proposed sale and dissolution are illegal and with the prayers for restraint against the consummation of the plan pending final hearing. Upon the filing of the bill, an order issued requiring National to show cause on August 11th, 1947, why it should not be restrained from carrying out the dissolution and sale, and on the same day a further order was entered restraining the implementing of the resolutions pending the return of the order. On August 8th, 1947, the complainant filed an amended bill, joining additional parties and making further allegations. The amended bill reiterated the charge of the illegality of the dissolution and sale and, among other things, sought an interlocutory injunction. At the request of the parties, the hearing was carried until September 11th, at which time oral argument was had. Thereafter, the parties sought and received permission to file briefs.
The question for determination at this point, is whether or not there should be a restraint pending final hearing against the carrying out of the two resolutions approved by the stockholders of National. The power to issue injunctions is the strongest weapon at the command of the court of equity, and its use, therefore, requires the exercise of great caution, deliberation and sound discretion. The pattern to which the application for a preliminary injunction must conform, has been repeatedly stated by the Court of Errors and Appeals. Before the court of equity may issue its injunction, it must find, first, that the complainant's right to the relief sought is clear and free from doubt. Secondly, it must appear that irreparable damage will follow the refusal of the writ. There must be, as the cases put it, an urgent and compelling necessity that the injunction issue. And, third, subject to but few exceptions, the defendants must have failed to controvert the facts which are alleged to create an equity in favor of the complainant. Citizens Coach Co. v.Camden Horse Railroad Co., 29 N.J. Eq. 299; Hagerty v. Lee,45 N.J. Eq. *Page 511 255; McMillan v. Kuehnle, 78 N.J. Eq. 251; Sneath v.Lehsten, 120 N.J. Eq. 327.
The defendants maintain that the proposed action is authorized by R.S. 14:3-5, which reads as follows:
"Any corporation organized under this title or under an act entitled `An act concerning corporations' (Revision of 1896), approved April twenty-first, one thousand eight hundred and ninety-six, or under an act entitled `An act concerning corporations' (Revision), approved April seventh, one thousand eight hundred seventy-five, except railroad and canal corporations, may, by action taken at a meeting of its board of directors, sell or exchange all or substantially all of its property and assets, including its goodwill, upon such terms and conditions and for such considerations, which may be in whole or in part shares of stock or other securities, or both, of any other corporation or corporations as its board of directors deems expedient and for the best interests of the corporation, when and as authorized by the affirmative vote of two-thirds in interest of the holders of each class of stock having voting powers on the proposal given at a stockholders' meeting duly called for that purpose, or when authorized by the written consent of two-thirds in interest of the holders of each class of stock having voting powers on the proposal.
"Notice of the meeting or of the consent shall be given to all stockholders of record of the corporation, whether or not they are entitled to vote on the proposal.
"If any stockholder shall, at the meeting or within twenty days after the meeting or the receipt of notice of the consent, object to the sale, and demand payment for his shares, the objecting stockholder or the corporation may, within sixty days after the meeting or the receipt of the notice of consent, apply for an appraisal of the stock as provided in section 14:12-6 of this title, all the provisions of which section shall in all respects be applicable."
A reading of the quoted section of the statute forces the conclusion that it furnishes ample authority for the sale of the operating assets of National to Allentown. Complainant argues that Wm. B. Riker Son Co. v. United Drug Co., 79 N.J. Eq. 580,
forbids such an action. I cannot agree with him. The RikerCase was concerned with a merger which this is not. And, too, the Riker Case was decided before the passage of the above quoted section of the statute. And, as the court pointed out in the Riker Case, "no statute of our state can be found which authorizes the proposed scheme." Here, in my opinion, we have a statute authorizing the contemplated course of action. In any event, whatever may be *Page 512 
the ultimate determination as to the right of the defendants to pursue the course outlined, it can certainly be said with conviction that the complainant does not have that clear and undisputed right to relief which would entitle him to interlocutory restraint.
Again, the complainant has failed utterly to show the compelling necessity and threat of irreparable damage which would justify the issuance of the injunction. Under the proposed plan, the value of his interest in the defendant company would be as great as it now is. If he is not satisfied with the proposed action, he may, under the statute, have his stock appraised and receive, in cash, the amount determined to be the value of his stock. And, assuming that the final hearing results in a decree for the affirmative relief, the defendants are before the court and can be made to respond to its mandate.
Further, the charges contained in the bill and affidavits, are controverted in all material respects, by the affidavits of the vice-president of the defendant, National.
As was said at the outset, complainant's interest is small and the damage which he may suffer is limited. Certainly, it is not irreparable. On the other hand, National may be subjected to considerable loss by reason of its inability to proceed with the proposed changes. In such a situation, where the damage to the defendant by reason of the continuing of the restraint, far exceeds that which may be suffered by the complainant because of the lifting of the restraint, equity requires that the restraint be dissolved.
I shall advise an order dissolving the ad interim restraint and denying a preliminary injunction. *Page 513