967 A.2d 315 (2009)
406 N.J. Super. 156
CONTINENTAL INSURANCE COMPANY, as successor by merger to Fidelity & Casualty Company of New York and as successor in interest as to certain policies issued by Harbor Insurance Company and London Guarantee & Accident Company of New York, National Fire Insurance Company Of Hartford, as successor by merger to Transcontinental Insurance Company, Columbia Casualty Company and Continental Casualty Company, Plaintiffs-Respondents,
v.
HONEYWELL INTERNATIONAL, INC., California Coastal Communities, Inc., Mafco Consolidated Group, Inc., Mack Trucks, Inc., PPP Corporation, Resco Holdings, LLC, Rust Engineering & Construction, Inc., Rust International, Inc., Swindell Dressler International Company, Waste Management Holdings, Inc., Wheelabrator Air Pollution Control, Inc., Wheelabrator Technologies, Inc., and UOP LLC, Defendants-Appellants, and
Allianz Insurance Company, Allianz Underwriters, Inc., Allianz Underwriters Insurance Company, Allstate Insurance Company, as successor in interest to Northbrook Insurance Company and Northbrook Excess & Surplus Insurance Company, American Centennial Insurance Company, American Home Assurance Company, American International Specialty Lines Insurance Company, f/k/a American International Surplus Lines Insurance Company, American International Underwriters Corporation, *316 American Motorist Insurance Company, Central National Insurance Company of Omaha, Century Indemnity Company, as successor to California Union Insurance Company and Insurance Company of North America, Employers Insurance Company of Wausau, as successor to Employers Mutual Liability Insurance Company of Wausau, Wisconsin, Employers Mutual Casualty Company, Federal Insurance Company, Fireman's Funds Insurance Company, First State Insurance Company, Hartford Accident and Indemnity Company, Highlands Insurance Company, Industrial Underwriters Insurance Company, Insurance Company of the State of Pennsylvania, Lexington Insurance Company, Certain Underwriters at Lloyd's of London and the Lloyd's of London Market Companies, National Union Fire Insurance Company of Pittsburgh, PA., Nationwide Indemnity Company, as successor to certain policies issued by Employers Mutual Liability Insurance Company of Wisconsin, Northern Assurance Company of America, as successor to Employers' Surplus Lines Insurance Company, North River Insurance Company, Old Republic Insurance Company, Republic Insurance Company, St. Paul Mercury Insurance Company, Tig Insurance Company, as successor in interest on certain policies issued by International Insurance Company, Travelers Casualty and Surety Company, as successor to Aetna Casualty & Surety Company, Travelers Indemnity Company, Twin City Fire Insurance Company, United States Fire Insurance Company, Westchester Fire Insurance Company, as successor to certain policies issued by United States Fire Insurance Company and International Insurance Company, and Zurich International (Bermuda) Ltd., Defendants-Respondents, and
Mafco Consolidated Group, Pullman Passenger Car Co., and U.S. Filter Corporation, Third-Party Defendants.
Honeywell International, Inc., Plaintiff-Respondent,
v.
Travelers Casualty and Surety Company, as successor-in-interest to Aetna Casualty and Surety Company, Hartford Accident & Indemnity Company, First State Insurance Company, New England Reinsurance Corporation, Twin City Fire Insurance Company, Century Indemnity Company, for itself and as successor-in-interest to Insurance Company of North America, Westchester Fire Insurance Company, Government Employees Insurance Company, Evanston Insurance Company, Royal Indemnity Company, Employers *317 Mutual Casualty Company, Midstates Reinsurance Corporation, and Nationwide Indemnity as agent for and on behalf of Employers Insurance Company of Wausau, Defendants-Appellants, and
American Reinsurance Company, Continental Insurance Company, for itself and as successor-in-interest to London Guarantee & Accident Company of New York, Dairyland Insurance Company, Fireman's Fund Insurance Company, International Insurance Company, National Casualty Company, and Republic Insurance Company, Defendants.
DOCKET NO. A-1973-08T1, DOCKET NOS. A-1976-08T1, A-1978-08T1, A-1979-08T1, A-1981-08T1, A-1982-08T1, A-1983-08T1, A-1984-08T1, A-1986-08T1
Superior Court of New Jersey, Appellate Division.
Argued February 4, 2009.
Decided March 24, 2009.
*318 Joseph P. Thacker (Cooper & Walinski) of the Ohio bar, admitted pro hac vice, argued the cause for appellants Resco Holdings, LLC, Rust Engineering & Construction, Inc., Rust International, Inc., Waste Management Holdings, Inc., Wheelabrator Air Pollution Control, Inc., and *319 Wheelabrator Technologies, Inc. in A-1973-08T1 and respondent PPC Corporation in A-1973-08T1 (Greenberg Traurig, LLP and Walder, Hayden & Brogan, PA, attorneys; Barry H. Evenchick, Thomas J. Spies and Robert J. Donaher, of counsel and on the briefs; Mr. Thacker and Keven D. Eiber (Brouse McDowell) of the Ohio bar, admitted pro hac vice, on the briefs).
David E. Schoenfeld (Grippo & Elden, LLC) of the Illinois bar, admitted pro hac vice, argued the cause for respondents Continental Insurance Company, National Fire Insurance Company of Hartford, Columbia Casualty Company, and Continental Casualty Company in A-1973-08T1 (Coughlin Duffy, LLP, attorneys; Suzanne Cocco Midlige, Christopher S. Franges, Mr. Schoenfeld, Marc S. Lauerman (Grippo & Elden, LLC) of the Illinois bar, admitted pro hac vice, and Brian J. Mowbray (Grippo & Elden, LLC) of the Illinois bar, admitted pro hac vice, of counsel and on the briefs).
Robert W. Mauriello, Jr., Morristown, argued the cause for respondents Travelers Casualty and Surety Company and The Travelers Indemnity Company in A-1973-08T1 (Graham Curtin, attorneys; Mr. Mauriello, on the brief).
Andrew T. Frankel (Simpson, Thacher & Bartlett, LLP) of the New York bar, admitted pro hac vice, argued the cause for appellant Travelers Casualty and Surety Company in A-1976-08T1, 1978-08T1, A-1979-08T1, A-1981-08T1, A-1982-08T1, A-1983-08T1, A-1984-08T1 and A-1986-08T1 (Cuyler Burk, PC, attorneys; Stefano Calogero, Mr. Frankel and Seth A. Ribner (Simpson, Thacher & Bartlett, LLP) of the New York bar, admitted pro hac vice, on the brief).
James P. Ruggeri (Hogan & Hartson) of the Washington, D.C. bar, admitted pro hac vice, argued the cause for appellants Hartford Accident & Indemnity Company, First State Insurance Company, New England Reinsurance Corporation and Twin City Fire Insurance Company in A-1976-08T1, A-1978-08T1, A-1979-08T1, A-1981-08T1, A-1982-08T1, A-1983-08T1, A-1984-08T1, and A-1986-08T1 (Carroll, McNulty & Kull, LLC, attorneys; Gary S. Kull, Mr. Ruggeri, William J. Bowman (Hogan & Hartson) of the Washington, D.C. bar, admitted pro hace vice, and James G. Christiansen (Hogan & Hartson) of the Washington, D.C. bar, admitted pro hac vice, on the brief).
Michael J. Lynch (K & L Gates, LLP) of the Pennsylvania bar, admitted pro hace vice, argued the cause for appellant in A-1973-08T1 and respondent Honeywell International in A-1976-08T1, A-1978-08T1, A-1979-08T1, A-1981-08T1, A-1982-08T1, A-1983-08T1, A-1984-08T1 and A-1986-08T1 (K & L Gates, LLP, attorneys; Mr. Lynch, Donald E. Seymour (K & L Gates) of the Pennsylvania bar, admitted pro hace vice, and John T. Waldron, III (K & L Gates) of the Pennsylvania bar, admitted pro hac vice, of counsel and on the brief; and Donald W. Kiel and Robert F. Pawlowski, on the brief).
White & Williams, Cherry Hill, attorneys for appellants Century Indemnity Company, Westchester First Insurance Company, Republic Insurance Company and Government Employees Insurance Company in A-1976-08T1, A-1978-08T1, A-1979-08T1, A-1981-08T1, A-1982-08T1, A-1983-08T1, A-1984-08T1, and A-1986-08T1, and respondents Northern Assurance Company of America and Republic Insurance Company in A-1973-08T1, join in the brief of appellants.
Traub, Lieberman, Straus & Shrewsberry, LLP, Edison, attorneys for appellant Evanston Insurance Company in A-1976-08T1, A-1978-08T1, A-1979-08T1, A-1981-08T1, A-1982-08T1, A-1983-08T1, *320 A-1984-08T1 and A-1986-08T1, join in the brief of appellants.
Christie, Pabarue, Mortensen & Young, Westmont, attorneys for appellant Royal Indemnity Company in A-1976-08T1, A-1978-08T1, A-1979-08T1, A-1981-08T1, A-1982-08T1, A-1983-08T1, A-1984-08T1 and A-1986-08T1, join in the brief of appellants.
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, Newark, attorneys for appellant MidStates Reinsurance Corporation in A-1976-08T1, A-1978-08T1, A-1979-08T1, A-1981-08T1, A-1982-08T1, A-1983-08T1, A-1984-08T1 and A-1986-08T1, join in the brief of appellants.
Smith, Stratton, Wise, Heher & Brennan, LLP, Princeton, attorneys for appellant Employers Mutual Casualty Company in A-1973-08T1, A-1976-08T1, A-1978-08T1, A-1979-08T1, A-1981-08T1, A-1982-08T1, A-1983-08T1, A-1984-08T1 and A-1986-08T1, join in the brief of appellants.
Schwartz, Simon, Edelstein, Celso & Kessler, LLP, Florham Park, attorneys for appellants Employers Insurance Company of Wausau and National Casualty Company in A-1976-08T1, A-1978-08T1, A-1979-08T1, A-1981-08T1, A-1982-08T1, A-1983-08T1, A-1984-08T1 and A-1986-08T1, join in the brief of appellants.
Before Judges CUFF, FISHER and BAXTER.
The opinion of the court was delivered by
FISHER, J.A.D.
The Supreme Court recently observed that "our federal system requires that courts of sister states, when appropriate, extend comity to one another," and reiterated its adherence to the general rule that, when substantially similar suits are filed in separate jurisdictions, the court that first acquires jurisdiction takes precedence in the absence of special equities. Sensient Colors Inc. v. Allstate Ins. Co., 193 N.J. 373, 378, 939 A.2d 767 (2008). We granted leave to consider the trial court's application of comity principles in these two matters; although the two matters have not been consolidated, we listed them back-to-back and now decide the issues in both matters by way of this single opinion.
In the first action, Continental v. Resco,[1] the trial judge permanently enjoined those who have been referred to as the Resco defendants from prosecuting suits they had commenced in Texas, Ohio and Indiana after the trial judge permitted the expansion of the scope of Continental v. Resco to include all the claims previously asserted in the actions pending in those states. Because, in these convoluted circumstances, the right to claim Continental v. Resco as the first-filed action is uncertain at best, and because the special equities favor our deferral to the courts of our sister states, we reverse the injunction.
In the second action, which, unlike Continental v. Resco, presents a circumstance similar to the conflicts between jurisdictions experienced in the past, we reverse the denial of a motion to dismiss or stay Honeywell v. Travelers[2] because a *321 New York action filed by Travelers in the Supreme Court of New York eight days earlier than Honeywell v. Travelers is entitled to first-filed status.

I

CONTINENTAL v. RESCO

A. Procedural History

In considering the propriety of the anti-suit injunction entered in Continental v. Resco, we necessarily start with an examination of what is claimed to be the first-filed action. The first of the complaints filed in the competing suits in question was filed in the Law Division on January 12, 2004. Continental filed the action against what it referred to as the successor defendants of The Signal Companies, Inc. (Signal), an entity which Continental referred to as "a conglomerate with numerous subsidiaries," as well as the subsidiaries of one of Signal's subsidiaries, Kellogg Rust, Inc. (Kellogg Rust). Continental acknowledged it had provided liability insurance coverage to Signal and Kellogg Rust between April 1, 1982 and April 1, 1986.
Continental alleged that the successor defendants  Honeywell International, Inc., Waste Management, Inc., California Coastal Communities, Inc., Mafco Consolidated Group, Inc., Swindell Dressler International Company, Pullman Passenger Car Company, Wheelabrator Air Pollution Control, Inc., U.S. Filter Corp., and Aquilex Services Corp.  had been the targets of bodily injury claims caused by the claimants' exposure to asbestos and silica. Continental asserted in its complaint that these successor defendants "have sought or threatened to seek coverage" under the policies in effect between 1982 and 1986. The stated purpose of this suit, at its inception, was to declare whether the successor defendants had the right to coverage under the specified policies or whether they were strangers to the policies. On May 30, 2006, more than twenty-eight months after the filing of the complaint, Continental filed a first amended complaint, which joined as additional "successor defendants," PPC Corporation, Resco Holdings, LLC, Rust Engineering & Construction, Inc., and Rust International, Inc.; these entities as well as the previously-named Wheelabrator Technologies and Waste Management Holdings, Inc. are what we have already referred to as the Resco defendants.
The claims asserted in Continental v. Resco revolved around the facts that, in 1985, Signal and Allied Corporation merged to create Allied Signal, and, in 1986, Allied Signal, in a series of transactions prompted by antitrust considerations, divested several of its former businesses, and conveyed them to other entities, including Honeywell, which was formed in 1999 when Honeywell, Inc. merged into Allied Signal. As the complaint and amended complaint reveal, the chief purpose of the suit was to resolve whether Signal had permissibly assigned or otherwise conveyed its rights to the Continental policies to the so-called successor defendants, including the Resco defendants. The only other insurers joined to the action at that time were insurers that had issued policies to Signal and Kellogg Rust during the same period,[3] or were primary carriers for Signal and Kellogg Rust for the periods of time immediately before and *322 immediately after the 1982-1986 period during which Continental provided coverage.[4]
The parties acknowledge that their energies in the case were aimed primarily, if not exclusively, at resolving personal jurisdiction disputes, which were not finally put to rest until the fall of 2007.[5] The successorship issues at the heart of the suit  that is, whether the successor defendants are, by nature of their relationship to Signal or Kellogg Rust, entitled to the benefits of the policies in question  have yet to be resolved.[6]
Instead, out of a concern about a conflict with certain out-of-state lawsuits, which we will momentarily describe, Continental sought an injunction that would prohibit the Resco defendants from prosecuting those other suits. Although the trial judge acknowledged the lack of any serious conflict when the application for temporary restraints was heard, the judge then invited Continental to amend its complaint to include the claims asserted in the out-of-state suits. Continental filed a second amended complaint on April 2, 2008, and a third amended complaint on May 7, 2008, which incorporated the claims previously asserted in the out-of-state suits commenced approximately two years earlier by the Resco defendants. This generated the very conflict that then prompted the judge to impose the anti-suit injunction in question.

B. The Out-of-State Lawsuits

As Continental v. Resco remained limited to a dispute about whether or to what extent Continental might be responsible to provide coverage to subsidiaries and successors of its named insureds, the Resco defendants filed coverage actions in other jurisdictions, namely, Ohio, Indiana and Texas.

1. Ohio
Resco filed a complaint in the Ohio Court of Common Pleas, Cayahoga County, on June 20, 2006, seeking coverage for asbestos claims and liabilities arising from its so-called "Rust businesses," including Rust Engineering Co. and Swindell-Dressler.[7] The record on appeal reveals that this coverage suit relates to over 35,000 asbestos claims that have been filed against the Rust businesses. The action joined more than fifty insurers and concerned 165 insurance policies and their applicability to asbestos exposure between 1940 and 1988.
By way of a comity motion, the Ohio court dismissed Resco's claims with respect to one of the policies, which was included within Continental v. Resco, on *323 January 14, 2008. The Ohio court stayed the action on March 26, 2008 in order to permit mediation. However, the mediation process has been stalled because the Resco defendants were prohibited from proceeding in that action by the anti-suit injunction that is the subject of this appeal.

2. Indiana

Two actions are presently pending in Indiana, suits that have been referred to as the "U.S. Filter" case and the "Baghouse Litigation."

a. The U.S. Filter Case

The first of the two relevant Indiana actions, which related to the production of Wheelabrator blast machines,[8] was commenced on June 18, 2004, in the Indiana Circuit Court, Marion County.[9]
The action concerns a dispute between U.S. Filter Corporation and primary, umbrella and excess insurers that issued policies relevant to the manufacture of blast machines. Some of the Resco defendants intervened in that action in December 2004. On January 20, 2006, the Indiana court dismissed claims filed by those Resco defendants under three policies that were duplicative of the claims then at issue in the New Jersey action.
At the time Continental v. Resco was expanded through the filing of Continental's second and third amended complaints in the spring of 2008, the U.S. Filter action involved thirty-one insurers that had issued ninety-three insurance policies between 1954 and 1997.[10]

b. The Baghouse Litigation

A second suit, known as the "Baghouse Litigation,"[11] was filed in the Superior Court of Indiana, Marion County, on March 9, 2007.[12] In that action the Resco defendants sought coverage from twenty-eight insurers who issued 171 policies during the fifty-year period between 1954 and 2004.
On June 27, 2007, Continental filed a comity motion, which was denied by the Indiana court on October 31, 2007. The judge there reasoned that a far longer period of coverage was in dispute; he also commented on the limited progress in the New Jersey action since it was commenced in 2004:
Moreover, although the New Jersey case was filed in January 2004, most of the effort in that case so far has been dedicated to identifying and adding other necessary or desirable parties, and litigating jurisdictional issues.... There is no evidence that the New Jersey case is anywhere near resolution on the merits, either in general or as to the baghouse claims in particular.
In addition, the judge found that Indiana presented the only forum where the claims asserted in the Baghouse Litigation, which *324 was commenced more than one year before Continental amended its complaint in Continental v. Resco to include those claims, could be completely adjudicated.
On August 27, 2008, the Baghouse Litigation was stayed by the Indiana trial judge pending the outcome of anticipated rulings in the U.S. Filter case. In his order of that date, the judge indicated that he had conferred with the trial judge in Continental v. Resco about the anti-suit injunction now under review here. The Indiana judge stated that he would, following certain rulings in the U.S. Filter case, "address the propriety of this litigation in light of the New Jersey proceeding and the issues of policy limits as they affect the various defendants in both pieces of litigation."

3. Texas

Resco filed suit on September 28, 2007 in the District Court of Wharton County, Texas,[13] seeking coverage from twenty-six insurers, five of which are also parties to Continental v. Resco, on policies issued between 1946 and 1988 relating to claims involving the manufacture of railcars, power plant construction, and the industrial engineering and construction operations of PPC Corporation and M.W. Kellogg Co.[14]
On December 5, 2007, Continental moved to dismiss Resco's claims in this action on comity grounds. The Texas court denied that motion on February 7, 2008. The record reveals that when the application for injunctive relief was filed, the Texas trial judge reached out to the trial judge in Continental v. Resco, indicating he had hopes of settling the Texas case. Even though the trial judge here then entered the anti-suit injunction that restrained Resco from further prosecuting the Texas suit, the Texas court has proceeded undeterred.
A trial in the Texas action is now scheduled to commence on March 30, 2009.

C. Continental's Applications For a Temporary Restraining Order and a Permanent Injunction

On December 4, 2007, Continental moved for the entry of an order that would "restrain[ ] the Resco [d]efendants from pursuing duplicative litigation." During the oral argument that followed, the trial judge recognized the narrow scope of the New Jersey suit as it then existed:
I do not see how this case, in its present posture, can decide anything except for the line of corporate succession; which we have been trying to resolve for the last almost four years  three-and-a-half years, certainly.
The judge further acknowledged that the parties chose not to include the many other issues pled in the out-of-state cases even though, in an early case management order in Continental v. Resco, "everybody was invited to bring in everybody else, any entity, any carrier that they felt was necessary to resolve the issues."
Notwithstanding the undisputed and well-understood limitations of the New Jersey case as it then existed, the trial judge restrained the Resco defendants for thirty days from filing "any suit that could pertain to this action, in order to allow either Resco or any other party to bring *325 additional parties into this action that are necessary for a resolution of the issues." The judge held that "anything that's going to affect the allocation proceeding in this case belongs before this [c]ourt," and provided the parties with additional time to amend the pleadings.
As we have mentioned, in April and May 2008, Continental filed second and third amended complaints that named as parties all the insurers in the out-of-state cases that had not previously been named in Continental v. Resco. With that, Continental sought a permanent injunction, arguing that "[n]ow that all of the satellite insurers have been brought into this case, the satellite suits are entirely duplicative of this action and thus, completely unnecessary."
On July 24, 2008, the trial judge heard argument and, for reasons expressed in an oral decision, granted Continental's application for a permanent injunction. Despite the care the courts of our sister states had taken to ensure that the Resco defendants would not litigate in their courts claims that had previously been asserted in Continental v. Resco, the trial judge here took the extraordinary steps of first creating a conflict with the pending out-of-state lawsuits and then issuing an anti-suit injunction in an attempt to shut down those other lawsuits.
Not surprisingly, problems arose with enforcement of the temporary restraints imposed even before the permanent injunction was entered on August 13, 2008. A few weeks earlier, the Resco defendants sought leave from the temporary restraining order so that they could submit additional written argument to the Indiana Supreme Court in the U.S. Filter case. A month later, the Resco defendants sought permission to respond to an order to show cause that had been issued by the Indiana Supreme Court in that case. Later still, the Resco defendants wrote to the trial judge seeking guidance in light of continuing developments in both the Texas suit and the Indiana Baghouse suit. In response, the trial judge wrote to counsel, stating:
This court will not be put into the position of ad hoc advice on various events that arise in litigations that the Resco [d]efendants have been restrained from pursuing. I believe that you have a copy of the order, as do counsel who are involved on behalf of the Resco [d]efendants in litigations in other states. I believe that the order is clear and I will not be engaging in a continuous re-interpretation of the order.
I have attempted to contact [the Texas judge], who has chosen not to return my phone calls. [The Texas judge] is apparently of a different view than am I as to the propriety of the Texas litigation. That is simply a problem that the Resco [d]efendants will have to face, in light of their obvious refusal to dismiss the Texas action, as well as actions pending in other states.
On October 7, 2008, the trial judge denied the Resco defendants' motion for reconsideration and denied a request for a stay of the injunction pending their anticipated motion for leave to appeal.
On December 17, 2008, we granted the motions filed by the Resco defendants for leave to appeal the permanent injunction. We expedited the perfection of the appeal as well as the scheduling of oral argument in this case as well as in the companion case, Honeywell v. Travelers. We now reverse the permanent injunction.[15]

*326 D. Legal Analysis

Our Supreme Court has cautioned that the power to impose an anti-suit injunction to bar a litigant from prosecuting a suit pending in another state is "delicate" and should only be exercised "whenever the true interests of justice so require." Trustees of Princeton Univ. v. Trust Co. of N.J., 22 N.J. 587, 598, 127 A.2d 19 (1956); see also O'Loughlin v. O'Loughlin, 6 N.J. 170, 179, 78 A.2d 64 (1951). As the process was generally described by Justice Proctor, in writing for the Court in Applestein v. United Board & Carton Corp., 35 N.J. 343, 357, 173 A.2d 225 (1961) (citations omitted), "an anti-suit injunction must issue with an acute awareness that the power to enjoin prosecution of a foreign proceeding ought to be exercised sparingly, but that it should be conscientiously exercised whenever equity and justice require."
In approaching such problems, our courts have "long adhered to `the general rule that the court which first acquires jurisdiction has precedence in the absence of special equities.'" Sensient Colors, supra, 193 N.J. at 386, 939 A.2d 767 (quoting Yancoskie v. Del. River Port Auth., 78 N.J. 321, 324, 395 A.2d 192 (1978)).[16] Although preservation of the court's jurisdiction has been cited as a basis for imposing such an injunction, our courts have recognized that the first-filed rule was "established ... primarily for the benefit of the suitor, rather than for the protection of the dignity of the court." Bigelow, supra, 74 N.J. Eq. at 474, 71 A. 153. As a result, the power to enjoin is generally limited to circumstances where it is necessary "to avoid the vexation and oppression incident to multiple litigation in different jurisdictions," or "to preserve the court's prior jurisdiction over a particular controversy and avoid the spectacle of an unseem[ly] race resulting perhaps in conflicting judicial determinations." Trs. of Princeton, supra, 22 N.J. at 598, 127 A.2d 19. See also Bass v. De Vink, 336 N.J.Super. 450, 455-56, 765 A.2d 247 (App.Div.), certif. denied, 168 N.J. 292, 773 A.2d 1156 (2001); Am. Employers' Ins. Co. v. Elf Atochem N. Am., Inc., 280 N.J.Super. 601, 610, 656 A.2d 58 (App.Div.1995).
The general principles that guide our hand were summarized in the Supreme Court's recent decision in Sensient Colors:
If we are to have harmonious relations with our sister states, absent extenuating cir-cumstances sufficient to qualify as special equities, comity and common sense counsel that a New Jersey court should not interfere with a similar, earlier-filed case in another jurisdiction that is "capable of affording adequate relief and doing complete justice." The litigation of substantially similar lawsuits in multiple jurisdictions with opposing parties racing to acquire the first judgment is not only wasteful of judicial resources, but anathema in a federal system that contemplates cooperation among the states. Thus, any comity analysis should begin with a presumption in favor of the earlier-filed action.

*327 [193 N.J. at 387, 939 A.2d 767 (footnote and citations omitted) (quoting O'Loughlin, supra, 6 N.J. at 179, 78 A.2d 64).]
In applying these principles here, with the understanding that the first-filed presumption is not inflexible, ibid., we conclude: (1) there is, at least, considerable doubt about Continental's right to claim first-filed status for Continental v. Resco; (2) the prior rulings of our sister states in considering the propriety of comity stays or dismissals in their courts were entitled to weight; (3) the injunction under review does not vindicate comity principles and has already created disharmony and doubt; (4) New Jersey does not possess a dominant interest in these claims and the other states have substantial interests in resolving the coverage claims pending in their courts; (5) no party will endure great hardship or inconvenience if the out-of-state suits continue; (6) the slow pace of Continental v. Resco demonstrates that the trial court's arrogation of claims first filed in other states will not provide the parties with a more adequate or complete remedy; (7) no significant concern for inconsistent determinations is warranted if the out-of-state suits continue; and (8) ultimately, the imposition of an anti-suit injunction exceeded the delicacy required in such matters. For these reasons, we reverse the anti-suit injunction under review.

1. First-Filed Status

The initial problem with this difficult case concerns application of the first-filed presumption. True, among the cases that have been referenced in the procedural history we have recounted, Continental v. Resco was filed first. But its scope at that time, and for many years after, paled in comparison to what it became after the far more expansive out-of-state suits were filed. That is, prior to the time the other suits were filed, Continental v. Resco consisted of a dispute limited to four policies, included as parties only five insurers, related to a time span of a mere four years (1982-1986), and sought to resolve only Continental's responsibility to provide coverage on behalf of entities it alleged to be "strangers" to the policies in question. Early in the action, a case management order invited the inclusion of all other necessary parties and related claims; that invitation resulted only in the filing of the first amended complaint and its minor adjustment of the boundaries of the suit.
With that as the status of Continental v. Resco, and after years consumed by personal jurisdiction disputes, the Resco defendants intervened in the U.S. Filter suit in Indiana, and commenced the other suits in Indiana, Ohio and Texas to which we have referred. These out-of-state cases were far more vast in scope than Continental v. Resco as it existed when the out-of-state cases were commenced. The Texas action involves 157 insurance policies issued by twenty-one other insurers[17] over a forty-two-year span (1946-1988); the Indiana U.S. Filter case involves ninety-three insurance policies issued by thirty-one other insurers over a forty-three-year period (1954-1997); the Indiana Baghouse Litigation involves 171 insurance policies issued by twenty-eight other insurers over a fifty-year time span (1954-2004); and the Ohio action involves 194 insurance policies issued by twenty-nine other insurers over a forty-eight year span (1940-1988).
With a few overlapping claims, which were recognized at early stages and, in most respects, dismissed by the courts of our sister states, the great bulk of these *328 out-of-state claims were in a very real and pragmatic sense "first-filed" in Texas, Indiana and Ohio. Only after those actions were commenced did the trial judge here invite the filing of amended pleadings for the purpose of appending to Continental v. Resco the numerous claims that had already been asserted in Texas, Ohio and Indiana. For that reason, we view it as an oversimplification in this unique case to view Continental v. Resco as "first-filed." Of the suits in question, Continental v. Resco was filed first, but the claims in question were filed first in other states.
Stated another way, in light of these unusual circumstances, we conclude that the premise for an anti-suit injunction that a later-filed suit was commenced that included substantially the same parties, claims and issues, Sensient Colors, supra, 193 N.J. at 391, 939 A.2d 767  did not exist when injunctive relief was sought in Continental v. Resco. In adhering to Sensient Color's template, we must first consider whether the second-filed suit includes substantially the same parties, claims and issues as in the first-filed suit. See also Am. Home Prods. v. Adriatic Ins. Co., 286 N.J.Super. 24, 37, 668 A.2d 67 (App.Div.1995). Accordingly, if we view Continental v. Resco as the first-filed suit, and the out-of-state cases as the later filed suits, when Continental sought injunctive relief there was little similarity let alone substantial similarity  in these allegedly competing suits. It was not until after Continental moved for injunctive relief  indeed, it was only because Continental moved for injunctive relief  that the trial judge invited the assertion of additional claims in Continental v. Resco. Only then did Continental v. Resco become a suit containing substantially the same parties, claims and issues that were previously asserted in the out-of-state cases. Once the conflict was created, the trial judge then concluded that a permanent anti-suit injunction was required to prevent the claims from being litigated in more than one location at the same time.
Because of the status of Continental v. Resco at the time the injunction was sought, we conclude that Continental failed to demonstrate there were conflicting claims warranting the trial court's intervention and, rather than create the circumstances that generated the need for injunctive relief, the trial judge should have found the absence of conflicting suits and denied relief.
Even if we were to assume that Continental v. Resco has the right to claim first-filed status, we conclude that a consideration of the other relevant factors militated against the issuance of an injunction. Indeed, in less ambiguous situations, the first-filed presumption has been overridden when the later-filed suit presented a more natural or convenient forum, or when other "special equities" predominated. See, e.g., Sensient Colors, supra, 193 N.J. at 387-88, 939 A.2d 767; Century Indem. Co. v. Mine Safety Appliances Co., 398 N.J.Super. 422, 438, 942 A.2d 95 (App.Div. 2008). We conclude that the special equities referred to by the trial judge were of insufficient weight to warrant the drastic steps taken, and that the great weight of the equities warranted the denial of injunctive relief.

2. The Prior Application of Comity Principles by the Other Jurisdictions

In considering the other "special equities" recognized by Sensient Colors, we retrace some of the steps already taken. Here, as has been revealed, Continental v. Resco grew to its current expansive size as a reaction to the Resco defendants' out-of-state actions. As the trial judge recognized, in ruling on Continental's initial application for a temporary restraining order, *329 she "[could] not see how this case, in its present posture, can decide anything except for the line of corporate succession" involving Signal, Kellogg Rust, the Resco defendants and others. That was certainly an accurate description of the state of the pleadings in Continental v. Resco. At that point, only minor overlaps existed among the claims pled in Continental v. Resco and those asserted in Texas, Indiana and Ohio.
Indeed, that no comity concerns were implicated at the time Continental sought injunctive relief here is revealed by the fact that the courts of our sister states were asked by Continental to stay or dismiss some or all aspects of the Resco defendants' claims and, in weighing the same interests of comity that we must apply here, took action to ensure that claims being litigated in Continental v. Resco would not be litigated in their courts as well. All this occurred before the trial court imposed its temporary restraining order against the Resco defendants.
Accordingly, we find the determinations of the courts of the other states as to whether or to what extent their actions were in conflict with Continental v. Resco to be a "special equity" that should have been considered in weighing the propriety of an anti-suit injunction. The days are gone when our courts "distrust the proceedings of the courts of our sister states as we once did," Cogen Technologies N.J. Venture v. Boyce Engineering International Inc., 241 N.J.Super. 268, 272, 574 A.2d 1018 (App.Div.), certif. denied, 122 N.J. 358, 585 A.2d 368 (1990), a statement which our Supreme Court cited with approval in Sensient Colors in instructing that we must at times put aside parochial interests "[i]f we are to have harmonious relations with our sister states." 193 N.J. at 387, 939 A.2d 767. The record reveals that the courts of our sister states took great care to avoid any conflict with Continental v. Resco. Rather than grant full faith and credit, the trial judge implicitly distrusted the out-of-state determinations and expanded Continental v. Resco so that it would conflict with the other cases and provide the groundwork for the anti-suit injunction. We are of the view that the rulings by the out-of-state courts on Continental's comity motions were entitled to weight in determining whether it was appropriate to enter an anti-suit injunction here.

3. The Anti-Suit Injunction Has Created Disharmony Among the Involved Jurisdictions

Not only has the injunction created the potential for disharmony, it has actually been the impetus for creating conflict among the jurisdictions. The trial judge's expansion of Continental v. Resco, which created the conflict with the other out-of-state suits and fueled the purported need for the anti-suit injunction, has failed to gain the faith and credit of our sister states. Although it has been honored by the Ohio court, the Texas and Indiana courts have continued to proceed and have expected the Resco defendants to participate in their suits notwithstanding the anti-suit injunction.
We agree with the general proposition that the equitable power to grant injunctive relief is not limited to those injunctions that will likely be obeyed. We do not suggest that the trial judge should only have entered the injunction if convinced the other courts would adhere; we need only refer to our Supreme Court's direction that such an injunction may issue "whenever the true interests of justice so require," Trustees of Princeton, supra, 22 N.J. at 598, 127 A.2d 19, to recognize that the likelihood of compliance is not the test. But comity principles invoke notions of courtesy and respect, and it is understandable  and *330 of legitimate concern that our sister states would be unwilling to cooperate with the goals of the anti-suit injunction in light of the fact that the conflict among the suits was created after the injunction was sought and after the suits in their courts were commenced and had progressed.
Comity is not a one-way street leading only to New Jersey. A court's deliberate reshaping of an action to substantially overlap an existing suit in a sister state, as the means of frustrating or precluding the prosecution of the prior suit in the other state, is hardly geared toward gaining universal acclaim among our neighbors. The fallout from the anti-suit injunction, which occurred so soon after issuance of the injunction, demonstrates the consequences of an unduly expansive approach to the power to issue such an order.[18]

4. New Jersey Possesses No Dominant Interest in the Claims Asserted In Other States

Another factor that will at times favor an anti-suit injunction in vast coverage disputes, which the trial judge relied upon here, is when a state has the dominant interest in the remediation of polluted property within the state. In Sensient Colors, the Court held that
[t]he most important special equity for not deferring to the first-filed rule is New Jersey's strong public policy interest in the remediation of environmental contamina-tion within its borders. That interest in-cludes ensuring that an insurance policy-holder is not wrongly denied funds for the clean-up of a hazardous-waste-ridden site.
[193 N.J. at 394, 939 A.2d 767.]
The record reveals that New Jersey has no dominant interest of this type to support the anti-suit injunction  quite the contrary.
The great bulk of the tens of thousands of claims at the heart of the coverage disputes pending in our sister states, and only recently appended to Continental v. Resco, arose in the other states. Rather than focus on that fact, the judge referred to the New Jersey corporate headquarters of Honeywell and Allied Signal to justify what she referred to as New Jersey's "substantial interest in resolving the matter" here. This is not what the Sensient Colors Court meant when it described "the most important special equity"; in that regard, the Court referred to the remediation of property in New Jersey. Ibid. No similar New Jersey property interests are implicated in any of the suits in question. Moreover, the need to provide a remedy to New Jersey citizens for their personal injury claims is of no concern here because most of the claimants in the cases for which coverage is sought are citizens of other states.

5. The Lack of Great Hardship or Inconvenience to the Parties

It is difficult to take seriously any hardship claim if the litigation continues in the *331 other states. The insurers undoubtedly are accustomed to litigating such disputes in all the other jurisdictions involved. Indeed, a number of out-of-state attorneys have appeared in this case, and the record reveals that the same is true of the cases pending in Indiana, Ohio and Texas. Moreover, the insurers that have been named in these suits are undoubtedly familiar litigants in the courts of our sister states.
The circumstances do not remotely meet the "great hardship and inconvenience" standard that has relevance in considering the demands of comity. Sensient Colors, supra, 193 N.J. at 389, 939 A.2d 767; O'Loughlin, supra, 6 N.J. at 180-81, 78 A.2d 64.

6. The Progress of Continental v. Resco

The Court in Sensient Colors recognized that another special equity concerns the progress of the competing suits. 193 N.J. at 396, 939 A.2d 767 (citing Gosschalk v. Gosschalk, 48 N.J.Super. 566, 580, 138 A.2d 774 (App.Div.), aff'd o.b., 28 N.J. 73, 145 A.2d 327 (1958)); see also Elf Atochem, supra, 280 N.J.Super. at 614, 656 A.2d 58; Cogen Techs., supra, 241 N.J.Super. at 273-74, 574 A.2d 1018. As we have indicated, the Texas court has scheduled a trial to commence on March 30, 2009, less than one month from now  a circumstance that would suggest that court has progressed far ahead of the New Jersey court in resolving the claims there pending. The status of the Indiana and Ohio actions, which we outlined earlier, also reveals progress beyond Continental v. Resco. For example, some of the merits of the Indiana U.S. Filter case have already been addressed by the Indiana Supreme Court. The Ohio action was in mediation, but has since been stayed, apparently because the anti-suit injunction has been honored there.
On the other hand, we must acknowledge that Continental v. Resco was commenced over five years ago. After years devoted to personal jurisdiction disputes, the corporate successor issues originally pled in Continental v. Resco have yet to be resolved, and the coverage issues that were pled in the out-of-state cases were not joined to Continental v. Resco until April and May 2008. Discovery proceedings and any progress on either the merits of the successor corporate issues, let alone the newly-pled coverage disputes, have been delayed as the trial court considered, and now this court considers, the propriety of the anti-suit injunction. As Continental concedes, at the time we granted leave to appeal to review the anti-suit injunction nearly five years after the filing of the complaint  the parties were only "in the early phases of merits discovery."
Insistence upon the litigation in New Jersey of all the claims pending in Indiana, Texas and Ohio will constitute a regression in the adjudication of those claims. The comparatively greater progress of the suits outside this State demonstrates that these other fora are capable of rendering "complete justice" with respect to these claims. Sensient Colors, supra, 193 N.J. at 387, 939 A.2d 767; O'Loughlin, supra, 6 N.J. at 179, 78 A.2d 64.

7. Inconsistent Judgments Will Not Likely be Rendered in the Absence of the Anti-Suit Injunction

The trial judge expressed in her oral decision a concern for conflicting judgments issuing from these separate suits:
The existence and the potential for inconsistent rulings is what generated my rulings on the anti-suit injunction. If these four actions go on simultaneously, then there is the potential for inconsistent rulings and duplicative proceedings.... All I wanted to do was have my *332 four policies and my four policy years. Apparently, it was necessary to have a larger global coverage case here and I will have to deal with it.
It is apparent from these general comments, as well as the very nature of what was pending in all four jurisdictions prior to the entry of the injunction, that no real conflict among the suits was presented. As the judge noted in the above comments, and elsewhere, Continental v. Resco as it existed prior to the injunction presented a very narrow dispute. It was only the judge's determination that the claims asserted in the other jurisdictions should then, at that late date, be asserted in Continental v. Resco, that generated the potential for overlapping or inconsistent rulings on the coverage issues. Prior to that time, the courts in the other states had dismissed some parts of the Resco defendants' claims that appeared repetitive of what had been filed in Continental v. Resco out of concern for inconsistent determinations.
We find it a mistaken exercise of the judge's discretion to create the means for inconsistent rulings  by inviting amended pleadings to explode the narrow limits of the existing suit  and then cite the potential for inconsistent rulings as the basis for the anti-suit injunction.

8. Summary

We discern from the trial judge's decision to impose an anti-suit injunction an overriding concern that all claims as to all parties regarding the same collection of facts and circumstances should ordinarily be bundled in a single suit. Undoubtedly, the principle that, whenever sensible, all claims as to all parties should be joined in a single suit is sound and is enforced in our courts, for compelling reasons, on a regular basis. However, we must also recognize that the entire controversy approach is just one of a number of principles to be considered in ensuring the proper adjudication of disputes.
Generally, all modern rules of procedure are to be applied in a manner that will best serve the fair and efficient administration of justice. See, e.g., Ragusa v. Lau, 119 N.J. 276, 283, 575 A.2d 8 (1990); Shulas v. Estabrook, 385 N.J.Super. 91, 102, 895 A.2d 1234 (App.Div.2006); Tumarkin v. Friedman, 17 N.J.Super. 20, 26-27, 85 A.2d 304 (App.Div.1951), certif. denied, 9 N.J. 287, 88 A.2d 39 (1952). Because the vindication of that ultimate goal may conflict with comity principles when some claims as to some or all parties are filed in other sovereign states, a more cautious approach must be taken before a court attempts to arrogate all aspects of convoluted disputes spanning over multiple states in a single suit. Indeed, an expansive application of entire controversy principles would inevitably  and erroneously eliminate the need to apply the important principles of comity in circumstances such as this.
Certainly, the trial judge's interest in creating a single location for the disposition of all the claims asserted in all jurisdictions cannot, as a general matter, be faulted. But, for the reasons we have expressed, the judge's desire to vindicate the entire controversy doctrine has mistakenly failed to adequately appreciate the important interests of comity and has already generated disharmony, frustrated cooperation among states contemplated in our federal system, and attempted to compel the litigation of claims in New Jersey that were more naturally lodged in the other states.[19] Moreover, due to *333 the lack of substantial progress in Continental v. Resco with regard to the narrow issues originally pled, as opposed to the greater progress made in the other states regarding the coverage claims there asserted, the anti-suit injunction represents a large step backward in the efficient adjudication of the claims newly-asserted in Continental v. Resco.[20] Observing that none of the parties will suffer great hardship or inconvenience by litigating the disputes in multiple jurisdictions, we find a lack of compelling or persuasive evidence for the exercise of the trial court's power to impose an anti-suit injunction.
We again acknowledge our Supreme Court's admonition that the power to enter such an injunction is "delicate," Trustees of Princeton, supra, 22 N.J. at 598, 127 A.2d 19, and "ought to be exercised sparingly," Applestein, supra, 35 N.J. at 357, 173 A.2d 225.[21] In affording appropriate deference to our sister states, which have made greater progress in their coverage disputes, and in vindicating the most efficient method of dispensing with all these claims  regardless of the fact that the claims will be adjudicated outside our boundaries  we conclude that the injunction should not have issued and can no longer stand.[22]

*334 II

HONEYWELL v. TRAVELERS

A. Procedural History

Honeywell v. Travelers presents a dispute regarding the application of the same comity principles that governed our disposition of Continental v. Resco. The procedural history of Honeywell v. Travelers, and the competing suit in New York, which we will refer to as Travelers v. Honeywell, are comparatively simple.
The record reveals that a predecessor of Travelers issued four excess liability policies to Eltra Corporation covering a period that commenced on July 1, 1976 and ended on March 1, 1980; Travelers also issued four excess liability policies to Allied Corporation covering a period that commenced on October 1, 1983 and ended on March 1, 1986. Allied acquired Eltra in 1979; in 1999, Allied merged with Honeywell.
Honeywell's claims against Travelers stem from asbestos liabilities incurred by North American Refractories Company (NARCO), a corporation once owned by Eltra, then owned by Allied, and eventually spun off as an independent entity. At facilities in Michigan, Kentucky, Indiana and Pennsylvania, NARCO manufactured and sold refractory products, some of which contained asbestos. Thousands of asbestos personal injury suits were filed across the country against NARCO.
NARCO filed for bankruptcy protection in the United States Bankruptcy Court for the Western District of Pennsylvania on January 4, 2002.[23] Honeywell did not file for bankruptcy protection, but it did agree to fund NARCO's bankruptcy pursuant to agreements between Honeywell and NARCO that afforded Honeywell complete protection against pending and future asbestos claims. To gain the support for the bankruptcy plan of those who had made claims against NARCO, Honeywell entered into a series of post-petition settlements, which covered approximately 257,000 claimants, committing itself to pay billions of dollars; it is alleged that Honeywell did not seek the consent of its insurers before entering into these settlements. The bankruptcy plan of reorganization also contemplated a claims administration process.
The record reflects that Travelers and Honeywell engaged in sporadic settlement discussions for approximately four years regarding whether or to what extent Travelers would be obligated to fund the settlements.
On May 23, 2006, Travelers filed an action in New York Supreme Court, New York County, Index No. 101738/06, against Honeywell and twenty-one other excess insurers of Eltra and Allied, seeking declaratory relief. Eight days later, on May 31, 2006, Honeywell commenced this action in the Law Division. No one has disputed that the New York and New Jersey actions, commenced by Travelers and Honeywell, respectively, involve substantially the same parties, claims and issues.
*335 Honeywell moved in August 2006 in the New York trial court for a dismissal based on comity grounds. That application was denied by way of a memorandum and order entered by the New York trial judge on September 12, 2006.[24]
Six weeks later, on October 24, 2006, the trial judge here denied Travelers' motion to dismiss or stay Honeywell v. Travelers on comity grounds. On December 21, 2006, we denied Travelers' motion for leave to appeal. Our Supreme Court, however, granted Travelers' motion for leave to appeal on February 21, 2007, 189 N.J. 639, 917 A.2d 782 (2007), and, a few months after it decided Sensient Colors, the Court summarily remanded the matter to the trial court "for further proceedings, including consideration of the decision in Sensient Colors ..., and to permit the parties to address such other special equities as may be asserted," 196 N.J. 82, 951 A.2d 1036 (2008).[25]
The trial judge again denied Travelers' motion, indicating that Sensient Colors did not make much difference in the way comity issues in this setting should be decided, and recognizing that her decision "fl[ew] in the face of not only the Supreme Court[[26]], but the New York Appellate Division." In so ruling, the judge relied on the fact that New Jersey law regarding the allocation of liability for the claims in question was more beneficial to the New Jersey policyholder than New York law:
Now, the equities that I am taking into consideration, and the most important, the most significant one is the ... New Jersey public policy with regard to allocation of insurance coverage on longtail policies, and specifically on asbestos claims. Owens-Illinois[[27]] clearly identifies that, and it is an important public policy. We have a lot of asbestos cases in New Jersey, a lot of manufacturers in New Jersey who used asbestos, and consequently we have a lot of those cases with New Jersey defendants, and the maximization of coverage is an important policy and a state interest, and Sensient says specifically that a forum state will be more likely to give effect to its own laws when a strong public policy is in effect, and of course the public policy is the safety and welfare of people in New Jersey. In Sensient it is different than the public policy I'm talking about here, but this is an important public policy nonetheless. There is also a public policy that is expressed in Sensient along with the environmental public policies and the protection of the regulatory process, and that is the protection of New Jersey policyholders.
The trial judge also applied a "second and last" special equity as a result of her finding that Travelers had engaged in forum *336 shopping. In explaining this ruling, the judge held that she was "certainly not making a bad faith ruling now, I'm making a forum shopping ruling, which is not always bad faith, but which is always vexatious, and what has happened here is that it's become obvious that the insurers want New York law to apply, and that's why they filed suit in New York, and there isn't anything wrong with that unless it occurs in this context of appearing to be forum shopping and it flies in the face of significant state interests and public policy in a second filed state." In elaborating on this point, the judge indicated that Travelers' conduct in filing suit in New York before Honeywell filed suit in New Jersey "flies in the face of New Jersey's very strong policy favoring settlement of litigation," and was wasteful of judicial resources as well as the parties' time and money.
We granted the motions of Travelers and other insurers for leave to appeal and now reverse the order denying the motion to stay or dismiss this action.

B. Legal Analysis

Unlike Continental v. Resco, we consider not the entry of an anti-suit injunction, but a refusal of the court having jurisdiction over a second-filed suit to either dismiss or stay the action in order to defer, on comity grounds, to a first-filed suit pending in another state.
As we have already indicated in discussing Continental v. Resco, the comity analysis starts with identifying the first-filed suit. Unlike Continental v. Resco, in which that particular question proved problematic, there is no doubt as to which action was filed first. The New York action was filed eight days before the New Jersey action, giving rise to a presumption that the parties' claims should be litigated in New York, not New Jersey.
In Sensient Colors, the Court held that, in order for the second-filed suit to continue, the defendant in the second-filed suit must demonstrate there is a first-filed suit in another jurisdiction that "involve[s] substantially the same parties, the same claims, and the same legal issues." 193 N.J. at 391, 939 A.2d 767 (quoting Am. Home Prods., supra, 286 N.J.Super. at 37, 668 A.2d 67). There is no dispute on these two points  the New York action was filed first and it involves substantially the same parties, claims and issues as does the New Jersey action. As a result, Sensient Colors places the burden on the party arguing that jurisdiction should be retained in the second-filed suit, i.e., Honeywell, to show
that it will not have the opportunity for adequate relief in the first-filed jurisdiction. The inability of the first-filed jurisdiction to provide adequate relief is akin to a special equity. All special equities are grounded in principles of fairness, and are implicated when a first-filed action may not do full justice.... [S]pecial equities must be demon-strated by the party urging that a court retain jurisdiction over a later-filed action.
The defendant seeking a comity stay or dismissal in the second-filed action should not have to argue that the other party will receive a fair day in the courts of another jurisdiction. The plaintiff in the second-filed action contending that it cannot receive a fair hearing on the merits of its claims in the courts of the first-filed jurisdiction is in the best position to advance that argument. That approach com-ports with the presumption in favor of the first-filed action and our recognition that "[w]e do not distrust the proceedings of the courts of our sister states...."
[193 N.J. at 392, 939 A.2d 767 (footnote and some citations omitted) (quoting Cogen Techs., supra, 241 N.J.Super. at 272, 574 A.2d 1018).]
*337 We are satisfied that Honeywell failed to sustain this burden.
In her oral decision, the trial judge appears not to have adhered to the approach mandated by Sensient Colors. Rather, the trial judge simply cited what she viewed as two special equities that warranted retention of jurisdiction over the parties' disputes. The judge's decision reveals the type of distrust about the proceedings in New York that has ceased to be a consideration in resolving comity issues.[28]
If we assume that the judge implicitly found that Travelers sustained the burden imposed by Sensient Colors  there is no dispute that it did  the judge was obligated to impose on Honeywell the burden of demonstrating the presence of special equities of such a "compelling" nature, 193 N.J. at 386, 939 A.2d 767, as to warrant the overcoming of the first-filed presumption, id. at 392, 939 A.2d 767. The judge cited two circumstances that, in her view, outweighed the presumption in favor of the first-filed action: that New Jersey has an interest in maximizing coverage for its policyholders that favors the application of New Jersey law to these disputes and that New Jersey had a substantial interest, due to Honeywell's presence in New Jersey, which was disserved when Travelers won the "race" in lodging these claims in the New York courts.
The facts in the record reveal that the trial judge's first consideration  that New Jersey law is more favorable from the standpoint of the policyholders than New York law  is not the type of interest that should govern or influence the comity determination; moreover, because the New York court has ruled in Travelers v. Honeywell that New Jersey substantive law will be applied, the policy interest cited by the trial judge here, even if a legitimate factor in the comity determination, should be given little weight.[29] And, the judge's second basis for refusing to dismiss or stay this suit  Honeywell's relationship to New Jersey  is either overridden or at least in equipoise with the substantial relationship New York has to this dispute. In finding that the two points asserted by the judge are insufficient to overcome the first-filed presumption, we additionally observe that other factors also warrant a discontinuation of Honeywell v. Travelers. As to these additional factors, the record on appeal demonstrates that being compelled to *338 litigate in either a New Jersey or New York forum presents no hardship or inconvenience to the parties, that there is no persuasive evidence of a "race" to put the claims in suit, and that the claims may be adequately and fully adjudicated in our neighboring sister state without any prejudice to the parties.
In examining the special equities identified by the Court in Sensient Colors, the trial judge found that New Jersey provides a more appropriate forum than New York because New Jersey law would appear to provide greater or more extensive benefits to the New Jersey policyholder.[30] We find no support for the proposition that this is what the Court in Sensient Colors meant. Instead, we agree with Travelers' contention that if the trial judge was correct about the supremacy in comity considerations of a forum whose substantive law provides greater benefits to its policyholders, we would guaranty that "virtually any New Jersey-based company would have an automatic right to commence duplicative, second-filed litigation in New Jersey simply by showing that it is a New Jersey corporation and by speculating that it might receive a more favorable outcome in the second-filed action." That approach would be inconsistent with the Court's declaration that "comity" and "not competition" is the goal, and that comity principles are not to be interpreted to obtain a "parochial advantage for our court system." Sensient Colors, supra, 193 N.J. at 397, 939 A.2d 767.
The question to be considered is not whether a New Jersey policyholder will fare better in a dispute with its insurer if permitted to litigate in New Jersey but whether New Jersey's interest in the health and safety of its citizens and the remediation of property within its boundaries is at issue. Sensient Colors, supra, 193 N.J. at 394, 939 A.2d 767; Century Indem. Co., supra, 398 N.J.Super. at 437, 942 A.2d 95. When the focus is thus properly directed, it is clear that New York's interest in this litigation far exceeds New Jersey's. The suit involves the allocation of liability for the settlements entered into by Honeywell, a New Jersey-based entity, with tens of thousands of personal injury claimants. The record indicates that of these claimants, 29,918 are from New York while only 44 are from New Jersey.
It is the location of the personal injury claimants  as, in Sensient Colors it was the location of the contaminated property in New Jersey, 193 N.J. at 394, 939 A.2d 767  that is the type of interest that constitutes a "special equity" that might, depending upon the other factors, weigh in favor of the forum's interest in proceeding with a second-filed suit. Here, as we have indicated, New York has the far more substantial interest.
In addition, even if we were to ignore the fact that New York is home to the considerable bulk of the NARCO claimants, New Jersey is hardly the "natural forum" for these coverage disputes. The record reveals that although Honeywell maintains a large presence in New Jersey, its NARCO claims facility, created for purposes of administering and managing the NARCO claims, is located in New York City. The record also indicates that the Travelers policies in question were negotiated and brokered in New York, and *339 the Travelers office that underwrote the policies was located in New York City. Other circumstances reveal a considerable relationship between New York and these coverage claims; Eltra was headquartered in New York City, and Allied  Honeywell's predecessor  was incorporated in New York. And, even though Allied moved its headquarters to New Jersey in the 1970's, it utilized a New York address in connection with the issuance of the excess policies in question. Factors such as the location of NARCO's facilities from which the products in question were manufactured and sold-Michigan, Pennsylvania, Kentucky and Indiana  favor neither competing forum, nor does the fact that the settlements in question sprung from proceedings in the United States Bankruptcy Court for the Western District of Pennsylvania.[31]
There is simply no support for a finding that Travelers engaged "in jurisdiction shopping to deny the other party the benefit of its natural forum," which may, in appropriate circumstances, overcome the first-filed presumption. Sensient Colors, supra, 193 N.J. at 387, 939 A.2d 767. The very nature of this special equity suggests that the parties had a reasonable expectation that their claims would be litigated in a particular forum and that one of the parties has frustrated that expectation by racing to lodge the claims in an unnatural forum. As suggested by the facts about the relationship of the parties and claims to New York and New Jersey, outlined above, neither Travelers nor Honeywell may fairly claim that the forum each chose was a "natural forum" for this controversy. It was as logical and natural for one party to file in New York as it was for the other to file in New Jersey.
In addition, there is nothing about the timing of the two suits to suggest that one party had unfairly outraced the other to court. Sensient Colors suggested that such an unseemly race might rebut the first-filed presumption. 193 N.J. at 388, 939 A.2d 767. In this regard, the Court observed that "[c]ourts elsewhere have also declined to defer to a first-filed action when a party acting in bad faith has filed first `in anticipation of the opposing party's imminent suit in another, less favorable, forum.'" Ibid. (quoting EEOC v. Univ. of Pa., 850 F.2d 969, 976 (3d Cir.1988), aff'd on other grounds, 493 U.S. 182, 110 S. Ct. 577, 107 L.Ed.2d 571 (1990)).[32] As we *340 have held, neither New York nor New Jersey appears to be the "natural forum" as the term seems to have been understood in Sensient Colors or the cases upon which the Court relied in describing this special equity. Both the parties and the claims asserted have considerable relationships to both New York and New Jersey. This is not a situation where one of the parties, believing there was an advantage in avoiding the jurisdiction with considerable contacts to the parties or the claims, preempted a likely suit in one jurisdiction by quickly filing in a far less likely location. And the argument that there was a "race" to file cannot be seriously asserted. The parties negotiated without success for nearly four years before Travelers commenced suit in New York. At any time during that four-year interval, Honeywell could have filed suit in the forum of its choice and secured first-filed status. If this was a race to the court house, it may be the slowest such race on record.
We also briefly note there is no basis upon which any party to this action may claim "great hardship or inconvenience" in being forced to litigate in either forum. Sensient Colors, supra, 193 N.J. at 389, 939 A.2d 767. As the trial judge recognized, there is little geographic distance between the locations of the trial courts and the parties have far more than a passing familiarity with both fora. Indeed, Honeywell is in no position to argue the disadvantage of litigating in New York when the court there has already ruled in its favor on the choice of law question. And, in considering the progress of the competing suits, as was more fully explored in our discussion of Continental v. Resco, the New York intermediate appellate court ruled on the comity issue approximately one year ago and the trial court has since ruled on the choice of law issue of great interest to the parties. By the time of the trial judge's decision under review, some discovery had occurred in the New York action; it is not clear that any discovery has occurred in regard to the New Jersey action. Clearly, the New York action has moved at a quicker pace than its New Jersey counterpart.
To repeat Sensient Colors admonition, "absent extenuating circumstances sufficient to qualify as special equities, comity and common sense counsel that a New Jersey court should not interfere with a similar, earlier-filed case in another jurisdiction that is `capable of affording adequate relief and doing complete justice.'" 193 N.J. at 387, 939 A.2d 767 (quoting O'Loughlin, supra, 6 N.J. at 179, 78 A.2d 64). All the circumstances to which we have alluded demonstrate that New York constitutes a more than adequate forum for the adjudication of the claims and the facts relied upon by the trial judge are of little weight and certainly not of "a compelling nature" to warrant disregard of the first-filed presumption or to justify a refusal to give the deference to our neighboring sister state that the comity principles recognized in Sensient Colors warrant. Ibid. In short, Honeywell has failed to demonstrate that an "injustice would be perpetrated," id. at 389, 939 A.2d 767, if the claims were adjudicated in the first-filed New York action and the second-filed New Jersey action were dismissed or stayed. Honeywell failed to sustain the burden imposed upon it by Sensient Colors and, as a result, we conclude that the judge erred in denying Travelers' motion.

*341 III
In summary, we reverse the anti-suit injunction entered in Continental v. Resco. We recognize that it logically follows from our judgment in this appeal that the claims asserted in the second and third amended complaints, which conflict with the claims asserted in the out-of-state cases, are subject to either being stayed or dismissed. We leave for future consideration in the trial court whether it is more appropriate to stay rather than dismiss some or all of those portions of Continental v. Resco that were pled afterand overlapthe claims asserted in the out-of-state actions filed by the Resco defendants.
We also reverse the order that denied the motion to dismiss or stay Honeywell v. Travelers. Again, we do not now decide whether the action should be dismissed or stayed, but instead leave that particular point for consideration by the trial court in the first instance.
We do not retain jurisdiction.
NOTES
[1] This shorthand title refers to Docket No. L-133-04, which was commenced by plaintiffs Continental Insurance Company and Transcontinental Insurance Company (hereafter collectively "Continental") against Honeywell International, Inc., and the many other named defendants. Because of the pivotal role played by the Resco defendants in the proceedings in question, we refer to the action as Continental v. Resco even though none of the Resco defendants was the first-named defendant.
[2] This reference is to Docket No. L-1498-06. Plaintiff is referred to as Honeywell and Honeywell's adversaries have been referred to, in most instances, for simplicity's sake as Travelers, even though other insurers have advocated the same position as Travelers in this case.
[3] International Insurance Company was joined because it issued excess or umbrella policies to Signal and Kellogg Rust between 1982 and 1986.
[4] Travelers Casualty and Surety Co., formerly known as Aetna Casualty & Surety Co., provided primary coverage to Signal or Kellogg Rust prior to 1982; National Union provided primary coverage to those entities after 1986.
[5] Early in Continental v. Resco, California Coastal Communities, Inc., Mafco Consolidated Group, Inc., and PPC Corporation moved for dismissal, claiming the court lacked personal jurisdiction over them. (The date upon which that motion was filed cannot be ascertained from the record on appeal, but the record reveals that opposition was filed in February 2006.) It was not until September 17, 2007 that their motion was denied. We denied leave to appeal that interlocutory order on November 1, 2007.
[6] The proceedings in Continental v. Resco have progressed so slowly that, as late as February 9, 2009  shortly after the case's fifth anniversary  we received a motion for a limited remand so that discovery could be pursued during the pendency of this appeal. Continental acknowledged in its motion papers that the parties were only "in the early phases of merits discovery."
[7] Rust Int'l, Inc. v. AIU Ins. Co., CV-07-637166.
[8] We are informed that a blast machine is a device used for sand blasting operations in industrial settings. Wheelabrator's blast machines were manufactured in Indiana between 1932 and 1987.
[9] United States Filter Corp., et al. v. Allstate Ins. Co., et al., Cause No. 49D01-0409-PL-001745.
[10] In proceedings not directly related to the disputes between Continental and the Resco defendants either here or in Indiana, summary judgment was entered in favor of U.S. Filter regarding its right to insurance coverage. The Supreme Court of Indiana reversed and directed entry of judgment in favor of the insurers. Travelers Cas. & Sur. Co. v. U.S. Filter Corp., 895 N.E.2d 1172 (Ind.2008).
[11] A baghouse is an air pollution control device. The baghouses in question were manufactured in Indiana.
[12] Wheelabrator Techs., Inc. v. Allstate Ins. Co., et al., Cause No. 49C01-0703-PL-9613.
[13] Resco Holdings LLC v. AIU Ins. Co., Cause No. 42,383.
[14] We note that Travelers filed amended pleadings on May 22, 2007 that also represented an expansion of Continental v. Resco beyond its original well-defined and small scope. This Texas action was filed after that date, but the issues raised in the Texas action were not pleaded in New Jersey until the spring of 2008 when Continental filed its second and third amended complaints, well after the commencement of the Texas action.
[15] Both Continental and Travelers have argued in favor of the anti-suit injunction. We have generally referred only to Continental as the advocate of that position merely for simplicity's sake.
[16] References to this "first-filed" rule can be found in our jurisprudence as early as Home Insurance Co. v. Howell, 24 N.J. Eq. 238, 241 (Ch. 1873), and Bigelow v. Old Dominion Copper Mining & Smelting Co., 74 N.J. Eq. 457, 474, 71 A. 153 (Ch.1908). Even older decisions of the Supreme Court of the United States have recognized and applied the first-filed presumption. See Riggs v. Johnson County, 6 Wall. 166, 73 U.S. 166, 196, 18 L.Ed. 768, 776 (1868); Peck v. Jenness, 7 How. 612, 48 U.S. 612, 624-25, 12 L.Ed. 841, 846 (1849).
[17] By "other" insurers, we mean insurers other than those that were already parties to Continental v. Resco at the time.
[18] On October 31, 2008, the Resco defendants sought and obtained emergent relief from us in order to allow them to move for reconsideration in the Indiana Supreme Court in the U.S. Filter case notwithstanding the anti-suit injunction. Continental argues that the entry of this order demonstrates that the Resco defendants are not prejudiced by the injunction. We reject this. Obviously, prejudice results merely from the fact that the Resco defendants had to seek relief in this court in order to take action in another court. Moreover, it hardly suggests the strength of Continental's position or the validity of the injunction to argue that the injunction does not represent prejudicial interference with the Resco defendants' entitlement to prosecute its other suits because relief from the injunction has been readily granted.
[19] Certain mandatory aspects of the entire controversy doctrine have been abandoned as difficulties arose with the more rigorous application of the doctrine favored by the trial judge's decision here. See Allstate Ins. Co. v. Cherry Hill Pain and Rehab Inst., 389 N.J.Super. 130, 138-39, 911 A.2d 493 (App.Div. 2006), certif. denied, 190 N.J. 254, 919 A.2d 848 (2007). Indeed, the doctrine permits the weighing of equitable considerations "to ease the path upon which the doctrinal bar travels." Hillsborough Twp. Bd. of Educ. v. Faridy Thorne Frayta, 321 N.J.Super. 275, 284, 728 A.2d 857 (App.Div.1999). See Joel v. Morrocco, 147 N.J. 546, 555, 688 A.2d 1036 (1997) (recognizing, as the Court held in Prevratil v. Mohr, 145 N.J. 180, 190, 678 A.2d 243 (1996), "that `equitable considerations can relax mandatory-joinder requirements when joinder would be unfair'"). The guiding principle in the application of the entire controversy doctrine is judicial fairness. See K-Land Corp. No. 28 v. Landis Sewerage Auth., 173 N.J. 59, 74, 800 A.2d 861 (2002); Reno Auto Sales, Inc. v. Prospect Park Sav. & Loan Assoc., 243 N.J.Super. 624, 630, 581 A.2d 109 (App.Div.1990).
[20] Fractionalization of the claims among multiple jurisdictions has been asserted here as support for the anti-suit injunction. It is important to recognize, however, that in Westinghouse Elec. Corp. v. Liberty Mut. Ins. Co., 233 N.J.Super. 463, 470-71, 559 A.2d 435 (App.Div.1989), we spoke of fractionalization as "a most potent weapon in the arsenal of the litigant whose primary and subversive aim is to impose both upon the judicial system and the adversary by endlessly delaying the day upon which the entire controversy will finally come to an end...." See also Elf Atochem, supra, 280 N.J.Super. at 612, 656 A.2d 58. That deeper concern is not implicated by fractionalization here. To the contrary, it is the trial judge's attempt at globalization of these claims that will delay the final resolution of the many claims and issues asserted in these cases because of Continental v. Resco's historically slow pace.
[21] We recognize that a determination to impose an anti-suit injunction should be similar to a determination to impose any other mandatory injunction. See Elf Atochem, supra, 280 N.J.Super. at 610, 656 A.2d 58. Such an order should not be entered when there is doubt about the likelihood of a true conflict between the competing suits or when it cannot be clearly or convincingly shown that injury will result from a continuation of the status quo. See, e.g., Waste Mgmt., N.J., Inc. v. Union County Util. Auth., 399 N.J.Super. 508, 520, 945 A.2d 73 (App.Div.2008); Subcarrier Comm., Inc. v. Day, 299 N.J.Super. 634, 638, 691 A.2d 876 (App.Div.1997). The courts of our sister states have shown a willingness to avoid a conflict with the claims pending in Continental v. Resco that runs counter to the need for an anti-suit injunction. We are indeed confident that the ultimate disposition of all the claims that have been asserted may occur through cooperation among the states rather than through the imposition of "the strongest weapon at the command of the court of equity." See Light v. Nat'l Dyeing & Printing Co., 140 N.J. Eq. 506, 510, 55 A.2d 233 (Ch.1947).
[22] For these reasons, we find it unnecessary to address the Resco defendants' additional arguments that: (a) the anti-suit injunction cannot stand because it is a prior restraint that infringes the speech and petition clauses of the First Amendment, and (b) Travelers' positions in Continental v. Resco and Honeywell v. Travelers are inconsistent and warrant application of the doctrine of judicial estoppel.
[23] In re North Am. Refractories Co., Case No. 02-20198, 2002 WL 34249393 (U.S.Bkr.Ct.W.D.Pa.).
[24] New York's intermediate appellate court affirmed that determination more than one year ago. Travelers Cas. & Sur. Co. v. Honeywell Int'l Inc., 48 A.D.3d 225, 851 N.Y.S.2d 426 (N.Y.App.Div.2008). There was no further appeal with regard to that comity determination.
[25] In the interim, Hartford and Travelers moved for partial summary judgment in the New York trial court, seeking the application of New York substantive law; Honeywell moved for a determination that New Jersey law governs. The New York trial judge determined, on April 1, 2008, that New Jersey substantive law will be applied to the Allied policies. Hartford's and Travelers' appeal from that decision is presently pending in New York's Appellate Division.
[26] We assume from the context, that the trial judge was not referring to our Supreme Court but the Supreme Court of New York, i.e., the New York trial court.
[27] Owens-Illinois, Inc. v. United Ins. Co., 138 N.J. 437, 650 A.2d 974 (1994).
[28] This distrust is revealed in the judge's comments about the decision of the New York trial court that New Jersey law should apply in the New York action. The trial judge expressed a concern that although the New York Appellate Division "may very well ... say [the New York trial judge] was right ... [t]hey could also say [the New York trial judge] was wrong, and it's too bad that that appeal had not been decided ... because I might have decided the case differently since the application of New Jersey allocation law is taking the paramount place in my description of the special equities that militate against survival of the second filed case, and the protection of New Jersey policyholders really goes hand and hand with that case, with that public policy expressed in Owens-Illinois." In other words, the trial judge revealed that her chief reason for refusing to defer to the New York court was her concern that the New York courts ultimately would not apply New Jersey law, thereby exhibiting a distrust of our neighbor that is inconsistent with Sensient Colors, supra, 193 N.J. at 387, 939 A.2d 767.
[29] The record suggests that, in seeking the continuation of the suit in New Jersey, Honeywell appears chiefly concerned not so much with the particular forum in which the issues will be adjudicated, but with securing a holding that the coverage disputes will be governed by New Jersey law. In light of the determination in New York that New Jersey law should apply, at least in part, Honeywell's concern about the particular forum would appear to hinge only on whether the choice of law ruling is upheld in New York's appellate courts.
[30] A comparison of Owens-Illinois, supra, 138 N.J. at 474-75, 650 A.2d 974, with the statement of New York law in Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp., 73 F.3d 1178, 1202 (2d Cir.1995), indicates the differences between New Jersey and New York law on this point. Because we conclude that the ultimate disposition of the choice-of-law question is not as significant as held by the trial judge here, we need not further explore the differences in our substantive law or the substantive law of New York.
[31] In her oral decision, the trial judge referred to New Jersey's interest in the enforcement of settlements as a reason for the entry of the order under review. Assuming this somehow has relevance in the comity determination, it is noteworthy that the settlements in question were achieved within the confines of a bankruptcy action pending in the Western District of Pennsylvania  a fact that would not inure in favor of either a New York or New Jersey forum in this case. And, although New Jersey does have a strong policy that favors the settlement of disputes, see, e.g., Nolan v. Lee Ho, 120 N.J. 465, 472, 577 A.2d 143 (1990); Jannarone v. W.T. Co., 65 N.J.Super. 472, 476, 168 A.2d 72 (App.Div.), certif. denied, 35 N.J. 61, 171 A.2d 147 (1961), we see no reasonable basis for interpreting that policy so as to include a New Jersey interest in the settlement of disputes in other jurisdictions.
[32] The Sensient Colors Court also referred to Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 103 S. Ct. 927, 74 L.Ed.2d 765 (1983), as an example of this special equity. 193 N.J. at 388, 939 A.2d 767. In that action, the contractor could not contractually compel arbitration until its adversary, a hospital, declined to arbitrate. When a dispute arose, "the hospital, less than a day after refusing to arbitrate, raced to file a declaratory judgment action in a North Carolina state court." Ibid. (citing Moses H. Cone Mem'l Hosp., supra, 460 U.S. at 6-7, 21, 103 S.Ct. at 932, 939, 74 L.Ed.2d at 774, 783). The contractor soon filed an action in federal court. In reviewing these circumstances, the Supreme Court held that the first-filed rule did not apply because, in part, the hospital did not give the contractor a "reasonable opportunity" to file suit in the jurisdiction of its choice. 460 U.S. at 21, 103 S.Ct. at 939, 74 L. Ed.2d at 783. In that case, the race to the courthouse was over before the sun set on the day the claim accrued; here, the so-called "race" took years to run its course.