**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0182-19

GETTY PROPERTIES
CORPORATION,

     Plaintiff-Appellant,

v.

ST. PAUL FIRE AND MARINE
INSURANCE COMPANY, THE
TRAVELERS INDEMNITY
COMPANY, TRAVELERS
PROPERTY CASUALTY
COMPANY OF AMERICA,
TRAVELERS CASUALTY AND
SURETY COMPANY, BEDIVERE
INSURANCE COMPANY,
NATIONAL UNION FIRE
INSURANCE COMPANY OF
PITTSBURGH, PA, ILLINOIS
NATIONAL INSURANCE
COMPANY, AIU INSURANCE
COMPANY, COMMERCE AND
INDUSTRY INSURANCE
COMPANY, AIG SPECIALTY
INSURANCE COMPANY, and
AMERICAN HOME ASSURANCE
COMPANY,

     Defendants-Respondents,

and

ACE AMERICAN INSURANCE
COMPANY,

     Defendant.

_____

Argued March 10, 2021 – Decided December 30, 2021

Before Judges Ostrer, Accurso and Vernoia.

On appeal from the Superior Court of New Jersey,
Law Division, Mercer County, Docket No. L-0006-19.

Jay M. Levin (Offit Kurman, LLP) argued the cause
for appellant.

Daren S. McNally argued the cause for respondents St.
Paul Fire and Marine Insurance Company, The
Travelers Indemnity Company, Travelers Property
Casualty Company of America and Travelers Casualty
and Surety Company (Clyde & Co US LLP, attorneys;
Daren S. McNally, Meghan Goodwin, Barbara
Almeida and Kurt Campanile, on the brief).

Gregory S. Capps (White and Williams, LLP) argued
the cause for respondent Bedivere Insurance Company
(Gregory S. Capps and Ciaran B. Way (White and
Williams, LLP), on the brief).

Cecilia F. Moss (Chaffetz Lindsey LLP) of the New
York bar, admitted pro hac vice, argued the cause for
respondents National Union Fire Insurance Company
of Pittsburgh, PA, Illinois National Insurance
Company, AIU Insurance Company, Commerce and
Industry Insurance Company, AIG Specialty Insurance
Company and American Home Assurance Company

(Riker Danzig Scherer Hyland & Perretti LLP, Cecilia F. Moss, and Charles J. Scibetta and Joshua D. Anders (Chaffetz Lindsey LLP), of the New York bar, admitted pro hac vice, attorneys; Anthony J. Zarillo, Jr., of counsel and on the brief; Michael J. Rossignal, Brooks H. Leonard, Charles J. Scibetta, Cecilia F. Moss and Joshua D. Anders, on the brief).

The opinion of the court was delivered by

OSTRER, P.J.A.D.

Getty Properties Corp. ("Getty") appeals from three Law Division orders dismissing its insurance coverage action in favor of pending litigation Getty's insurer filed first in New York. Getty seeks indemnification from its insurers, Travelers, AIG, and Bedivere,[1] for its liability in polluting groundwater in New Jersey, Pennsylvania, and Maryland with methyl tertiary butyl ether (MTBE). Environmental agencies in each state sued Getty (and other petroleum companies) between 2007 and 2017 to recover their remediation costs. Travelers filed its New York declaratory judgment action against Getty

_____

[1] "Travelers" refers to defendants St. Paul Fire and Marine Insurance Company, the Travelers Indemnity Company, Travelers Property Casualty Company of America, and Travelers Casualty and Surety Company. "AIG" refers to defendants National Union Fire Insurance Company of Pittsburgh, Pa., Commerce and Industry Insurance Company, AIU Insurance Company, AIG Specialty Insurance Company, Illinois National Insurance Company, and American Home Assurance Company. "Bedivere" refers to defendant Bedivere Insurance Company. Getty also sued and later settled with defendant Ace American Insurance Company ("Ace"), which is not a party to the appeal.

("the New York Action") on December 12, 2018, and Getty filed its lawsuit here ("the New Jersey Action") on January 2, 2019. AIG and Bedivere subsequently intervened in the New York Action.

In its appeal of the Law Division's orders, Getty argues the court failed to follow Sensient Colors, Inc. v. Allstate Insurance Co., 193 N.J. 373 (2008), and erred in not finding special equities favoring the New Jersey Action. Getty also contends the court erred by dismissing the claims against AIG and Bedivere before they were even parties to the New York Action. Getty further contends that forum non conveniens principles did not warrant dismissal.

We vacate the dismissal orders and remand for a more thorough analysis of the special equities in this case and forum non conveniens.

I.

At various times since 1971, Travelers, AIG, and Bedivere issued commercial general liability insurance policies to Getty. The relevant policies were issued to Getty (or a corporate predecessor, Power Test Corp.) at one of its New York addresses on Long Island, often with its New York-based broker's assistance. During the policy periods, Getty was involved in the purchase, storage, marketing, and distribution of automotive fuels and heating

A-0182-19

oil, as well as the acquisition, development, leasing, and disposition of gasoline station properties in New Jersey and the surrounding regions.

In 2007, New Jersey's Department of Environmental Protection ("DEP") sued Getty and forty-eight other petroleum companies under the New Jersey Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 to -23.24. and Water Pollution Control Act, N.J.S.A. 58:10A-1 to -35, in New Jersey Department of Environmental Protection v. Atlantic Richfield Co., alleging that MTBE in gasoline was discharged from various defendants' storage and delivery systems and entered groundwater. Seven years later, Pennsylvania sued Getty and other defendants in Commonwealth of Pennsylvania v. Exxon Mobil, alleging similar damage in that state. Maryland followed with similar claims in State of Maryland v. Exxon Mobil almost a year after that. The DEP's and Pennsylvania's lawsuits were consolidated in federal multi-district litigation, In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation, in the Southern District of New York, but aspects of the DEP action were later remanded to the District of New Jersey. Maryland's lawsuit was removed to federal court in that state.

Getty sought a defense and coverage from eleven insurers under more than fifty policies. Ace, which issued claims-made pollution liability policies,

5

settled with Getty. AIG agreed to provide a defense, but not coverage, for 2015 to 2018.

Over ten years after DEP first sued, Getty wrote to Travelers on April 17, 2018, to request that Travelers defend and indemnify Getty in all three actions under policies written between 1979 and 1989. Travelers replied by asking for information about Getty's other insurers and copies of Getty's policies with Travelers. Getty provided responsive information.

While Travelers considered Getty's coverage request, Getty's counsel asked Travelers to participate in an upcoming mediation in the DEP action. Counsel noted that Getty still awaited Traveler's coverage decision. Getty reiterated its request a month later.

A few days before the mediation, Travelers emailed Getty's counsel to say it would not attend; it was still investigating the policies for 1979 to 1982; it was investigating a potential breach of the policy notice provisions; but, as Travelers would detail in an upcoming letter, under the policies' pollution exclusion, Travelers had no duty to defend or indemnify Getty under policies covering September 1984 to September 1989. Three days later, Travelers explained in an October 29, 2018, letter why it disclaimed coverage for 1984 to 1989. Travelers cited the pollution exclusion. It also asserted DEP's

alleged damages did not involve an insured "occurrence" under the policies. Travelers also disclaimed coverage for 1985 to 1989 based on the terms of certain excess policies. Travelers reiterated it was still investigating the coverage demand for the policies covering 1979 to 1982, but questioned Getty's compliance with its obligation to notify Travelers promptly of a claim. Travelers asked for more information about Power Test's operations.

Although Travelers did not attend the mediation session on October 30, 2018, it asked Getty's counsel for an update, noting that its investigation of the matter was ongoing. In a detailed letter on November 8, Getty's counsel reported on the mediation and rebutted Travelers' grounds for disclaiming coverage. Counsel argued the pollution exclusion was limited to intentional acts under Morton International, Inc. v. General Accident Insurance Co. of America, 134 N.J. 1 (1993), and did not affect DEP's product-liability-sounding clams; Getty notified Travelers of DEP's lawsuit "as soon as it identified the Travelers Policies"; and Travelers was not prejudiced because AIG actively defended Getty.

A-0182-19

Three weeks later, Getty's counsel again wrote to Travelers asking it to contribute to a proposed settlement of the DEP action. Counsel noted that the polices for 1979 to 1982 did not include pollution exclusions.[2]

A short while later, Travelers and Getty filed competing lawsuits. Travelers struck first. On December 12, 2018, Travelers filed its coverage action in New York Supreme Court, Nassau County, Commercial Division, seeking a declaration that it was not obliged to defend or indemnity Getty for the claims against Getty in the three environmental lawsuits. The next day, Travelers responded to Getty's counsel's latest letter. Travelers denied coverage "under any of its policies" and refused to contribute to the settlement of the DEP lawsuit, which Getty settled anyway. Travelers cited Getty's late notice and the pollution exclusion.

Getty filed second. On January 2, 2019, Getty sued Travelers, AIG, Bedivere, and Ace in New Jersey seeking a declaration of coverage for the DEP action only, and damages.

Then followed competing motions to dismiss. On January 3, 2019, Getty moved to dismiss Travelers' New York Action as it pertained to Getty's demand for coverage of claims in the DEP action, but Getty let the New York

---

[2] While Getty and Travelers were jousting over coverage, Getty first wrote to Bedivere on November 9, 2018. Bedivere denied coverage three months later.

A-0182-19

Action proceed as to the Maryland and Pennsylvania actions. And on March 6, 2019, Travelers moved to dismiss or stay the New Jersey Action. Bedivere and AIG followed with their own motions to dismiss in New Jersey. Bedivere and AIG also moved to intervene in the New York Action.

Argument was heard in March on the New York motion and in May on the New Jersey motions. On May 8, 2019, the New York court denied Getty's motion, relying on the first-in-time rule and the parties' significant nexus with New York. And on June 4, 2019, the Law Division granted Travelers, AIG, and Bedivere's motions, and dismissed the New Jersey Action.

## II.

In the Law Division's oral opinion dismissing this case, the court relied in part on the New York court's ruling that the New York Action should proceed because it was first in time, and New York was the most appropriate forum. Citing the analytical framework in Sensient Colors, the court found that the differences between the suits were "minor at best" and the "claims and issues in the two lawsuits are substantially the same." The court noted, however, that the "New York action implicat[es] a few additional insurance policies that are not among the more than 50 policies at issue in New Jersey" and that the New York Action sought "a determination of coverage with

A-0182-19

respect to three underlying lawsuits" while the New Jersey Action sought to "resolve the coverage claim for the New Jersey underlying lawsuit only." The court also found the New York action was "more comprehensive and not substantially different." The court observed that "New York's interest is greater than New Jersey's interest."

The trial court specifically found that the "special equities factor stated in Sensient Colors weighs in favor of defendant's position" requiring dismissal, which was "consistent with the findings" of the New York court. The court held that Getty had not "met its burden" under Sensient Colors "to show that special equities overcome the presumption in favor of the first filed action in New York." However, the court did not analyze any of the purported special equities. Instead, it found that Continental Insurance Co. v. Honeywell International, Inc., 406 N.J. Super. 156 (App. Div. 2009), supported dismissal.

The court also granted the dismissal motion on forum non conveniens grounds. The court concluded that Getty's choice of forum "was entitled to no deference" because New Jersey was "'neither its place of incorporation or its place of business.'" (quoting Century Indem. Co. v. Mine Safety Appliances Co., 398 N.J. Super. 422, 440 (App. Div. 2008)). Furthermore, "New Jersey

does not have a paramount interest in remediation and the parties have greater contacts[3] in another jurisdiction."

## III.

On appeal, Getty argues that the trial court failed to follow <u>Sensient Colors</u> by failing to find special equities that favored hearing the New Jersey Action. Getty contends the court overlooked: New Jersey's dominant interest in resolving a coverage dispute involving pollution here; New Jersey's and New York's divergent public policies; Travelers' gamesmanship in suing first; and the New Jersey Action's greater comprehensiveness. Getty also argues it was error to dismiss the complaint against AIG and Bedivere when they were not yet parties to the New York Action. Lastly, Getty argues the court erred by dismissing the case on <u>forum non conveniens</u> grounds.[4]

## IV.

## A.

We begin with our standard of review. The decision to grant a comity stay or dismissal generally lies within the trial court's discretion. <u>Sensient</u>

---

[3] We surmise the judge said "contacts," although, due to an evident transcription error, the transcript reads "context."

[4] While this appeal was pending, Bedivere filed a notice of order of liquidation from the Commonwealth Court of Pennsylvania, indicating that a stay of all litigation against Bedivere was required.

<u>Colors</u>, 193 N.J. at 390. So does the decision whether special equities exist. <u>Exxon Research & Eng'g Co. v. Indus. Risk Insurers</u>, 341 N.J. Super. 489, 505 (App. Div. 2001). In deciding if the court abused its discretion, we consider, among other things, whether the trial court considered "all relevant factors" or rested its decision on "irrelevant or inappropriate factors." <u>Flagg v. Essex Cnty. Prosecutor</u>, 171 N.J. 561, 571 (2002). And "when the trial court renders a decision based upon a misconception of the law," we owe it no "particular deference" and review the legal issue de novo. <u>State v. C.W.</u>, 449 N.J. Super. 231, 255 (App. Div. 2017). <u>See also</u> <u>Manalapan Realty, LP v. Twp. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995) (stating appellate court reviews trial court legal rulings de novo).

Applying that standard of review, we conclude that the trial court failed to fully consider the special equities at stake. But we decline to perform that function ourselves, because it is a discretionary decision entrusted to the trial court in the first instance. <u>See</u> <u>State v. Micelli</u>, 215 N.J. 284, 293 (2013) (stating that the appellate courts should exercise original jurisdiction with "great frugality" and not to "'weigh[] evidence anew'" or independently find facts) (quoting <u>Tomaino v. Burman</u>, 364 N.J. Super. 224, 235 (App. Div. 2003), and then <u>Cannuscio v. Claridge Hotel & Casino</u>, 319 N.J. Super. 342,

12

347 (App. Div. 1999)); Aujero v. Cirelli, 110 N.J. 566, 578-79 (1988) (remanding to the trial court to reconsider its exercise of discretion to restore a dismissed case); Aaron-Andrew P. Bruhl, The Remand Power and the Supreme Court's Role, 96 Notre Dame L. Rev. 171, 218 (2020) (stating "an appellate court should usually remand when a potentially dispositive issue is one that calls on the trial judge to exercise discretion in light of the circumstances of the case"). We therefore vacate the court's order and remand for the court to reconsider and weigh these special equities, together with any additional special equities the trial court might find.

### B.

The Supreme Court has provided the framework for applying comity principles to lawsuits simultaneously pending in multiple jurisdictions. Sensient Colors, 193 N.J. at 386. "[L]itigation of substantially similar lawsuits in multiple jurisdictions with opposing parties . . . is not only wasteful of judicial resources, but anathema in a federal system that contemplates cooperation among the states." Id. at 387. Under the doctrine of comity, "'the court which first acquires jurisdiction [over a dispute] has precedence in the absence of special equities,'" id. at 386 (quoting Yancoskie v. Del. River Port Auth., 78 N.J. 321, 324 (1978)), which are "reasons of a compelling nature that

13

favor the retention of jurisdiction by the court in the later-filed action." Id. at 387.

This "first-filed rule" is not "an inflexible doctrine." Ibid. In seeking to stay or dismiss a second-filed New Jersey action on the basis of comity, the moving parties — here, the insurers — bear the burden to establish that: (1) there is an earlier-filed action in another state; and (2) the prior action involves "substantially the same parties, claims, and legal issues" as the second-filed action. Id. at 393. "Once that is established, the party opposing a stay or dismissal must demonstrate the presence of one or more special equities that overcome the presumption favoring the first-filed action." Ibid.

Special equities have been found under a variety of circumstances, including when: (1) "one party has engaged in jurisdiction shopping to deny the other party the benefit of its natural forum"; (2) a party has, "in bad-faith . . . filed-first" anticipating an "'imminent suit in another, less favorable, forum'"; (3) the second action implicates "significant state interests, such as the remediation of polluted sites," and deferring to the first action "'would contravene the public or judicial policy'"; or (4) proceeding with the first-filed action "would cause 'great hardship and inconvenience'" to a party in the first action, "and no unfairness to the opposing party" in the second action. Id. at

14

387-89 (quoting EEOC v. Univ. of Pa., 850 F.2d 969, 976 (3d Cir. 1988), aff'd on other grounds, 493 U.S. 182 (1990), then Philadelphia v. Austin, 86 N.J. 55, 64 (1981), and then O'Loughlin v. O'Loughlin, 6 N.J. 170, 179 (1951)).

"Whether special equities exempt a court from deferring to a first-filed action depends on a fact-specific inquiry that weighs considerations of fairness and comity." Id. at 389-90. A comity determination should be based on a "combination of the special equities." Id. at 397.

We discern no reason to disturb the trial court's determination that the insurers made the threshold showing. It is undisputed the New York Action was filed first. And both actions involve "substantially" the same parties, claims, and legal issues relating to the nature of the insurance coverage available to Getty. We acknowledge the New York Action started with just one insurer and the New Jersey Action started with several; and the New York Action involved claims for coverage in three states and the New Jersey Action is limited to coverage in one — but absolute symmetry is not required.

The issue is whether the trial court properly considered Getty's effort to demonstrate special equities that justified retaining jurisdiction in the second-filed action.

A-0182-19

## C.

We turn first to Getty's argument that, as in <u>Sensient Colors</u>, New Jersey's "dominant interest" in remediating pollution should have been controlling. We conclude the trial court erred by failing to identify and to weigh New Jersey's significant interest in remediating New Jersey contamination, including determining insurance coverage for such claims.

In <u>Sensient Colors</u>, 193 N.J. at 379-80, 397, an environmental claims case much like this one, a New York insured sued here for coverage from its insurers for environmental damages at its former factory in Camden, New Jersey, two months after the insurer filed a declaratory judgment action in New York. <u>Id.</u> at 382. We reversed the trial court's order dismissing the lawsuit here and the Supreme Court affirmed, stating, "The most important special equity for not deferring to the first-filed rule is New Jersey's strong public policy interest in remediation of environmental contamination within its borders." <u>Id.</u> at 394. The Court explained, "That interest includes ensuring that an insurance policyholder is not wrongly denied funds for the cleanup of a hazardous-waste-ridden site." <u>Ibid.</u> The Court affirmed retaining jurisdiction in an insured's second-filed action "[b]ecause of New Jersey's dominant

16

interest" in "ensuring that funds are available for the clean-up of toxic-laden property." Id. at 379.

Relying principally on our decision in Continental Insurance, Travelers attempts to distinguish Sensient Colors on the ground that here, there are pollution claims in three states, not one; the pollution affects groundwater, not soil at a single factory site; Getty is just one of many defendants in the underlying environmental litigation (and a relatively minor one); and Getty's lawsuit is not essential to assuring that remediation occurs. None of these factors, however, relieves the trial court of considering New Jersey's strong interest in remediating pollution, which extends to securing appropriate insurance coverage to those responsible for remediation.

Multistate pollution did not erase New Jersey's interests in American Home Products, 286 N.J. Super. at 24, in which the insured sued second in New Jersey after the insurer sued first in New York. Pollution affected thirty-seven sites, including ten here and one in New York. Id. at 39. Like Getty, the plaintiff was neither a New Jersey corporation nor headquartered here (rather, Delaware and New York respectively), and often litigated coverage disputes in New York. Id. at 31. And, like here, the New York court denied the insured's dismissal motion. Id. at 32-33. But we affirmed the trial court's

order denying the insurer's motion to dismiss the second-filed action here, finding that New Jersey's "significant interest in remediation of its polluted sites" was "qualitatively and economically predominant" over New York's connections to the case. Id. at 40.

In Century Indemnity, 398 N.J. Super. at 424-25, we considered Sensient Colors in "the far different context" of an appeal from the dismissal of an insurer's first-filed New Jersey action to allocate liability for product liability claims nationwide — a small portion involving New Jersey claimants — in favor of the insured's second-filed Pennsylvania action. We affirmed. The insurer sought the benefit of more favorable New Jersey law, id. at 428-29, but we held that Pennsylvania law would apply, so the insurer would secure "no greater relief" in New Jersey than in Pennsylvania. Id. at 437. We also considered the insurer's "unseemly haste" in filing here first, which we held provided "ample grounds for declining to enforce a first-filed rule." Id. at 439.

Although comity commanded dismissal in Continental Insurance — where we addressed two separate appeals we short-handedly named, Continental v. Resco and Honeywell v. Travelers, see 406 N.J. Super. at 164, n. 1 and n.2 — the multi-state nature of the claims was not the only factor at play. In its response to Gettys's appeal, Travelers invokes our discussion of

A-0182-19

Honeywell v. Travelers.[5]  In that case, policies were brokered in New York, and the insurer, Travelers, had offices in New York.  Id. at 194.  The insured, Honeywell, had a "large presence" in New Jersey but it established an asbestos claim facility in New York.  Ibid.  The New York court declined to dismiss Travelers' first-filed suit and the Law Division here declined (twice)[6] to dismiss Honeywell's second-filed suit here, relying primarily on two findings: Travelers "forum-shopped" by suing in New York, which disserved New Jersey's substantial interest in the case "due to Honeywell's presence" here, and New Jersey law on allocating liability favored policyholders.  Id. at 188-89, 191-92

We reversed, holding that the insured did not meet its burden to show special equities under Sensient Colors, and that the first-filed doctrine should apply.  Id. at 196-97.  We held the key question was "not whether a New Jersey policyholder will fare better in a dispute with its insurer if it is

---

[5]  Notably, in Continental v. Resco, we reversed an order that gave primacy to an insurer's lawsuit here, which in some respects was first-filed, concluding that the insured's lawsuits in three other states should proceed.

[6]  After the trial court's first order, the Supreme Court granted leave to appeal and remanded to the trial court, instructing it to apply Sensient Colors. Honeywell Intern. Inc. v. Travelers Cas. and Sur. Co., 196 N.J. 82 (2008); the trial court again decided to retain jurisdiction; and the defendant appealed. Continental Insurance, 406 N.J. Super. at 188-89.

permitted to litigate in New Jersey, but whether New Jersey's interest in the health and safety of <u>its</u> citizens, and the remediation of properties within <u>its</u> borders, is at issue." <u>Id.</u> at 193 (citing <u>Sensient Colors</u>, 193 N.J. at 394).

But that case did not involve environmental pollution, but asbestos bodily injury claimants in several states, with 29,918 in New York and just 44 in New Jersey. <u>Id.</u> at 193. We held the claimants' location, like the polluted property's location in <u>Sensient Colors</u>, was "the type of interest that constitutes a 'special equity' that might, depending upon the other factors, weigh in favor of the forum's interest in proceeding with a second-filed suit." <u>Id.</u> at 194. By contrast, there are no polluted properties in New York in this case and the MTBE pollution here was significant. Furthermore, the New York court in <u>Honeywell v. Travelers</u> had agreed that New Jersey law would apply, thus neutralizing any advantage might achieve by proceeding in our State.

We also reject Travelers' argument that Getty's settlement of DEP's claims against it distinguishes this case from <u>Sensient Colors</u>, because cleanup will occur regardless of how the coverage litigation resolves. <u>Sensient Colors</u> reaffirmed New Jersey's "interest in ensuring that the clean-up of any contaminated New Jersey site is fully funded." 193 N.J. at 394. New Jersey's "paramount interest in the remediation of toxic waste sites, and in the fair

compensation of victims of pollution, extends to assuring that casualty insurance companies fairly recognize the legal liabilities of their insureds." Johnson Matthey Inc. v. Pa. Mfrs. Ass'n, 250 N.J. Super. 51, 57 (App. Div. 1991). See also Gilbert Spruance Co. v. Pa. Mfrs. Ass'n, 134 N.J. 96, 113 (1993) (holding that New Jersey had a "dominant significant relationship" in insurance coverage litigation over contamination in New Jersey).

We also fail to see how groundwater pollution at multiple sites across the state triggers a lesser New Jersey interest than soil pollution confined to a single site. Reflecting the scope of the groundwater pollution, the State has secured partial settlements of $350 million from defendants in the DEP action.[7] In short, pervasive degradation of New Jersey's groundwater is no reason to distinguish Sensient Colors.

In sum, the trial court erred in failing to recognize New Jersey's interest in remediating environmental contamination within its borders, and the associated insurance coverage issues, as being a special equity worthy of consideration.

---

[7] See https://nj.gov/oag/newsreleases18/pr20180312a.html.

A-0182-19

D.

We also agree that the trial court erred by failing to consider, as a special equity, New York's and New Jersey's divergent public policies regarding environmental insurance coverage — specifically pertaining to pollution exclusion clauses and late notice issues.

As a matter of public policy, New Jersey will not enforce the standard pollution exclusion clause unless "the insured intentionally discharged, dispersed, released, or caused the escape of a known pollutant." Sensient Colors, 193 N.J. at 395 (quoting Morton Int'l, 134 N.J. at 31). "In contrast, New York had enacted a law, now repealed, that required insurance carriers to include that clause." Ibid. (citing City Belt Painting Corp. v. TIG Ins. Co., 795 N.E.2d. 15, 18 (N.Y. 2003)). Although New York no longer requires inclusion of this clause, a New York court would likely enforce such a provision on public policy grounds. Ibid. Thus, significantly, "New Jersey's interest [in litigating insurance coverage for pollution] becomes more compelling because of the divergent public policy approaches taken by New York and this state." Ibid.

Here, the public policy considerations regarding the pollution exclusion are identical to those in Sensient Colors. As the Sensient Colors Court found,

A-0182-19

New Jersey's interest became "more compelling" in light of the divergent public policy. Similarly here, this public policy must be a significant consideration in any special equity analysis.

A similar public policy divergence exists as to late notice. New York law on notice clauses favors forfeiture of insurance, while New Jersey public policy limits such forfeiture. Compare Unisys Corp. v. Ins. Co. of N. Am., 154 N.J. 217, 223 (1998) (applying New Jersey law "protecting New Jersey policyholders") with Atl. Gen. Constr. Inc. v. U.S. Liab. Ins. Grp., 806 N.Y.S.2d 225, 227 (App. Div. 2005) ("Although New Jersey law requires that an insurer show 'appreciable prejudice' before it disclaims coverage based upon an insured failure to timely notify it of an occurrence, New York law does not impose such a requirement." (internal citations omitted)). The varied public policies existing in New Jersey and New York require analysis and consideration in assessing the special equities here.

Our discussion of choice-of-law in Continental does not compel a different result. We held the fact that "New Jersey law is more favorable" to policyholders than New York law "is not the type of interest that should govern or influence the comity determination." 406 N.J. Super. at 192. That is because the special equity pertains to the public interest, not the policyholder's

A-0182-19

interest. The appropriate consideration is not whether our law favors the policyholder, but whether New Jersey's public policy favors coverage for remediation and ensuring the subsequent cleanups, in which New Jerseyans in general have a strong interest.

Accordingly, the trial court erred in failing to consider the divergent public policy of New Jersey and New York.

E.

Getty also argues the trial court should have considered Travelers's gamesmanship in filing this "first-strike maneuver." We decline Getty's invitation to find that Travelers, in bad faith, filed first to preempt Getty from selecting the forum. The trial court did not itself address the issue — although it noted that the New York court found Travelers actions were not "vexatious, oppressive, or designed to obtain an inequitable advantage." The trial court should decide the question in the first instance on remand.

In any event, we are not convinced that this record — which the parties may supplement on remand — compels finding gamesmanship as a special equity. As we have noted, after Getty tendered its claims to Travelers in April 2018, the parties exchanged communications for several months. The discussions reached a decisive stage when Travelers informed Getty in its

October 29, 2018 letter that it would neither defend nor indemnify Getty under the policies between 1984 and 1989. Although Travelers left the door ajar regarding policies for 1979 to 1982, it expressed doubt about coverage there, too, because of Getty's late notice; and Travelers declined to attend the mediation.

Rather than lull Getty into inaction, the October 29 letter may have been a wake-up call. Cf. Sensient Colors, 193 N.J. at 394 (noting that the insurer filed suit in a "first-strike maneuver . . . while a lulled Sensient sat on its rights"). Then, Getty's counsel wrote a brief-like rebuttal to Travelers' letter. In short, legal shots were fired and returned, and battle lines were drawn. A month-and-a-half after Travelers sent its letter disclaiming liability for 1984 to 1989, while Getty awaited a final decision on the 1979 to 1982 policies, Travelers sued in New York. The next day, Travelers disclaimed liability on the remaining policies.

Our law does not require an insurer to wait for its insured to sue for coverage; rather, an insurer may file a declaratory judgment action to resolve a coverage dispute. See Werner Indus. Inc. v. First State Ins. Co., 217 N.J. Super. 436, 442 (App. Div. 1987) (declaratory judgments are a "remedial device designed to expedite the definitive establishment of private rights and

25

duties and thereby forestall the emergence of costly and cumbersome litigation"), rev'd on other grounds, 112 N.J. 30 (1988). "The case law has overwhelmingly rejected the notion that an insured has the right to choose the forum in all instances and to avoid participation in a first-filed action by the insurer." Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 242 (2008).

In short, whether gamesmanship should weigh in the calculus, and, if so, to what is extent, is another issue for the trial court.

F.

We also reject Getty's argument that the trial court erred in deciding "that the New York action is more comprehensive." We recognize that Getty sued multiple insurers in New Jersey and Travelers was the sole insurer-party at the outset of its lawsuit (although AIG and Bedivere actively monitored the case from the beginning and intervened early in the life of the New York action). In Continental Insurance, we focused on the breadth of the allegedly first-filed suit at its inception, not after the trial court drastically expanded it. 406 N.J. Super. at 175-76. However, Travelers also addressed the issue of coverage for claims arising out of the Maryland and Pennsylvania actions. Getty's argument that the claims in those two actions were not ripe for decision

26

rings hollow in the face of Getty's repeated demands that Travelers provide a defense and indemnity in those cases. But comprehensiveness is just one of several factors the court should consider in assessing whether to relinquish jurisdiction.

## G.

Getty also contends the trial court committed factual and legal errors that contributed to its decision. We comment on these briefly.

First, Getty argues the trial court erred in finding that New York's interest was greater than New Jersey's. Getty argues that the place of insurance contracting — in this case, New York — creates a lesser interest than the place of pollution. In support, Getty cites our observation, in a choice of law analysis, that the place of insurance contracting can be "an artificial and arbitrary designation." Gilbert Spruance Co. v. Pennsylvania Mfrs. Ass'n Ins. Co., 254 N.J. Super. 43, 47 (App. Div. 1992), aff'd and remanded, 134 N.J. 96 (1993). More directly on point, we held in American Home Products, that New Jersey's interest, as the site of contamination, may be "qualitatively and economically predominant" over New York's interest. 286 N.J. Super. at 41. Unfortunately, the trial court did not provide its reasons for its finding regarding the two states' comparative interests. That prevents any analysis of

27

the court's finding. On remand, the court should provide the reasons for its finding.

Getty also argues the trial court misapprehended the location of the pollution because the judge, in a passing remark during oral argument, stated that the environmental lawsuits involved property damage in "Maryland, New Jersey, and New York." Evidently, the judge simply misspoke, as the argument made it clear the pollution occurred in New Jersey, Pennsylvania and Maryland.

Getty also contends the trial court erred in deferring to the New York court's decision denying Getty's dismissal motion there. On one hand, a previous comity determination of another jurisdiction can be a special equity. Continental Insurance, 406 N.J. Super. at 178-79. On the other hand, when New Jersey's interests in providing a forum are strong, the court may retain jurisdiction, despite the other jurisdiction's decision to proceed with its case. Am. Home Prod., 286 N.J. Super. at 41. On remand, the trial court shall address this aspect of its analysis in greater detail.

In sum, we vacate the trial court's comity decision and remand for a full balancing of the special equities. The court shall consider New Jersey's significant interest in remediating pollution here and assuring appropriate

28

insurance coverage, the divergent public policy of New Jersey and New York, and other relevant special equities.

V.

Getty argues that the trial court erred in dismissing this matter on the alternative ground of <u>forum non conveniens</u>. On remand, the court should conduct a full <u>forum non conveniens</u> analysis, which considers the private and public interest factors, including New Jersey's interest in remediating environmental contamination and ensuring insurance coverage for such remediation.

A <u>forum non conveniens</u> analysis is substantively different from a comity analysis. In a comity analysis, the court may dismiss or stay a lawsuit that was otherwise appropriately filed in New Jersey out of respect for the forum of the first-filed lawsuit; and the "general rule favors stays or dismissals . . . in the absence of special equities." <u>Am. Home Prod.</u>, 286 N.J. Super. at 35. In a <u>forum non conveniens</u> analysis, "[t]he general rule . . . favors retention of jurisdiction," <u>ibid.</u>, out of respect for the plaintiff's choice of forum, <u>see</u> <u>Yousef v. Gen. Dynamics Corp.</u>, 205 N.J. 543, 558 (2011), "unless the forum is manifestly inappropriate," <u>Am. Home Prod.</u>, 286 N.J. Super. at 35.

29

The decision whether to decline jurisdiction for <u>forum non conveniens</u> is an equitable one that rests in the court's sound discretion and will not be disturbed absent an abuse of discretion. <u>Kurzke v. Nissan Motor Corp. in U.S.A.</u>, 164 N.J. 159, 165 (2000). However, courts in New Jersey weigh the private and public interest factors delineated in <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501, 508-09 (1947). <u>Ibid.</u>

The private interests of the litigants relevant to a <u>forum non conveniens</u> determination include:

> (1) the relative ease of access to sources of proof, (2) the availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining the attendance of willing witnesses, (3) whether a view of the premises is appropriate to the action and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive, including the enforceability of the ultimate judgment.
>
> [<u>Id.</u> at 166 (quoting <u>D'Agostino v. Johnson & Johnson, Inc.</u>, 225 N.J. Super. 250, 263 (App. Div. 1988), <u>aff'd</u> 115 N.J. 491 (1989)).]

Courts must consider matters of public interest, such as:

> (1) the administrative difficulties which follow from having litigation pile up in congested centers rather than being handled at its origin, (2) the imposition of jury duty on members of a community having no relation to the litigation, (3) the local interest in the subject matter such that affected members of the community may wish to view the trial and (4) the

local interest in having localized controversies decided at home.

[Id. at 165 (quoting D'Agostino, 225 N.J. Super. at 263).]

We cannot adequately review the court's forum non conveniens determination without an appropriate analysis of these factors. It is no substitute to rely on our statement in Century Indemnity that no deference "need be given" to the insurer's choice of forum that was neither its place of incorporation nor its principal place of business. 398 N.J. Super. at 440. Notably, we addressed the private and public interest factors in Century Indemnity, 398 N.J. Super. at 439-40. On remand, the court shall provide a full analysis of the forum non conveniens factors if the court determines dismissal is warranted on that ground.

## VI.

Getty argues the trial court erred in dismissing the complaint as to AIG and Bedivere in favor of the New York Action because at the time, those insurers were not yet parties to the New York Action. As Getty would have it, even if the New Jersey court should relinquish jurisdiction over its dispute with Travelers, it should retain jurisdiction over its first-filed action against AIG and Bedivere. Bedivere argues its intervention relates back to the timing

A-0182-19

of filing of Travelers' lawsuit, so that its action in New York should also be deemed first-filed.

We need not decide here whether the relation-back doctrine should uniformly apply to determine which action is first-filed. Even if AIG and Bedivere technically were not first-filers in New York, severing their coverage dispute from Travelers' would likely disserve principles of comity and judicial efficiency. We leave it to the trial court to address that issue in the first instance.

Finally, irrespective of the court's decision on remand, the action against Bedivere must be stayed pursuant to the Pennsylvania court's liquidation order. See Hall v. Michael Bello Ins. Agency, Inc., 379 N.J. Super. 599, 604 (App. Div. 2005) (where a Texas injunction barring actions against an insurer in receivership was enforceable under comity principles in a New Jersey action against the insurer). See also Aly v. E.S. Sutton Realty, 360 N.J. Super. 214, 227 (App. Div. 2003) (holding that "comity demands deference to an initial stay order" in connection with the affairs of an insolvent insurer).

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION